NORMAN K. OHM *v.* JUNE L. OHM

[No. 1250, September Term, 1980.]

*Decided July 15, 1981.*

The cause was argued before MORTON, THOMPSON and WEANT, JJ.

*Saul E. Kerpelman* for appellant.

*Nelson M. Oneglia,* with whom were *Horowitz, Oneglia, Goldstein, Foran & Parker, P.A.* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

This is an appeal from a decree of divorce. The principal issues are whether the court below, in dissolving the parties' marriage and dividing their property, was correct in its determination that the husband's vested, matured right to receive benefits under a private, non-contributory pension plan was "marital property" within the meaning of Maryland's Property Disposition in Divorce and Annulment statute (the statute), Md. Cts. and Jud. Proc. Code Ann. § 3-6A-01, *et seq.* (1980 Repl. Vol., 1980 Cum. Supp.), and thus subject to equitable distribution upon divorce, and if so, whether the court properly valued and divided those bene-

fits.[1] We hold that the retirement benefits were properly included among the parties' marital property but that the chancellor failed to consider various factors relevant in the valuation and division of the benefits.

June L. Ohm, the appellee, was awarded a divorce *a vinculo matrimonii* from Norman K. Ohm, the appellant, in the Circuit Court for Prince George's County on August 11, 1980. The parties had been married for 39 years and had two sons, both now adults. At the time of the divorce, the husband was 57 years old and had been employed by the C. & P. Telephone Company for 39 years. He was earning a gross salary of $2,399.26 per month. As a result of his employment, he had acquired certain vested rights in a noncontributory pension plan maintained by his employer and was eligible to retire at any time, although his benefits would be increased if he chose not to retire until he was older. Under the plan, Mr. Ohm could elect to receive a pension of $1,019.36 per month, which would terminate upon his death, or he could elect a so-called survivor's benefit, under which he would receive $980.43 per month but which, after his death, would continue to pay $545.22 per month to his survivor until the survivor's death.

At the time of the divorce, Mrs. Ohm had been employed by the University of Maryland for some 10 years and had a gross salary of $1,020.56 per month. She also had acquired pension rights as a result of her employment, although no details concerning such rights are contained in the record.

In accordance with § 3-6A-05 (a) of the Courts Article, the chancellor determined the following to be marital property: the marital home, located in Maryland and owned by the parties as tenants by the entireties; a vacation home and four unimproved lots, located in Florida and also held as tenants by the entireties; a C. & P. Telephone contributory

---

1. A "vested" pension is one "which is not subject to a condition of forfeiture if the employment relationship terminates before retirement"; a "matured" pension is one under which there is an "unconditional right to immediate payment." In Re Marriage of Brown, 15 Cal. 3d 838, 126 Cal. Rptr. 633, 635 (1976). A "non-contributory" pension "is one which is funded solely by the employer," i.e., without deductions from the employee's wages. In Re Marriage of Hunt, 397 N.E.2d 511, 515 (Ill. App. 1979).

savings plan, in the husband's name, having a balance of $13,000; shares of A. T. & T. stock, individually or jointly titled; two $10,000 certificates of deposit, one in the name of the wife only, and the other in the names of the wife and the parties' two sons; a savings account in the name of the wife, having a balance of $3,600; six small insurance policies, two of which insured the lives of the sons; the household furniture located in the marital home; and, the benefits payable under the husband's retirement plan. The marital property, exclusive of the retirement plan, was determined to have a total value of $180,000. The chancellor ordered that the real property listed above be sold and that the proceeds remaining after indebtedness on the properties was discharged be equally divided between the husband and the wife; he ordered that the items of personal property be equally divided as well. With respect to the retirement plan, which he determined to have a present value of $134,224, the chancellor granted the wife a monetary award in the amount of $67,112, or one-half the value of the pension, and entered judgment against the husband in that amount. In addition, the chancellor directed that the parties' two automobiles be titled one in the name of each and awarded the wife alimony, in the amount of $150 per month, and attorney's fees. No determination or award was made with respect to the benefits payable under the wife's pension plan.

## I Marital Property

Section 3-6A-01 (e) of the Courts Article states:

> " 'Marital property' is all property, however titled, acquired by either or both spouses during their marriage. It does not include property acquired prior to the marriage, property acquired by inheritance or gift from a third party, or property excluded by valid agreement or property directly traceable to any of these sources."

The question of whether the right to receive benefits under a private pension plan is marital property, which under

§ 3-6A-05 (b) may be the subject of a monetary award "as an adjustment of the equities and rights of the parties" is not directly answered by the statute and has not heretofore been decided either by this Court or by the Court of Appeals. The issue has been addressed by the courts of numerous other states which, upon dissolution of a marriage, divide, either equally or equitably,[2] the property acquired by the parties during their marriage. The overwhelming majority of the courts have determined, either expressly or by implication, that vested rights under a private or public pension plan, to the extent such rights were acquired during the marriage, are property subject to division upon dissolution. *Rogers and Rogers,* 609 P.2d 877, 880 (Or. App. 1980); *see, Van Loan v. Van Loan,* 569 P.2d 214 (Ariz. 1977); *In Re Marriage of Brown,* 126 Cal. Rptr. at 634-35; *In Re Marriage of Mitchell,* 579 P.2d 613 (Colo. 1978); *In Re Marriage of Evans,* 406 N.E.2d 916, 918 (Ill. App. 1980); *Foster v. Foster,* 589 S.W.2d 223 (Ky. App. 1979); *Sims v. Sims,* 358 So. 2d 919 (La. 1978); *Hutchins v. Hutchins,* 248 N.W.2d 272 (Mich. App. 1976); *Elliott v. Elliott,* 274 N.W.2d 75 (Minn. 1978); *In Re Marriage of Powers,* 527 S.W.2d 949 (Mo. App. 1975); *In Re Marriage of Miller,* 609 P.2d 1185 (Mont. 1980); *Kruger v. Kruger,* 375 A.2d 659, 662 (N.J. 1977); *Copeland v. Copeland,* 575 P.2d 99 (N.M. 1978); *Hansen v. Hansen,* 273 N.W.2d 749 (S.D. 1979); *Cearley v. Cearley,* 544 S.W.2d 661 (Tex. 1976); *Englert v. Englert,* 576 P.2d 1274 (Utah 1978); *DeRevere v. DeRevere,* 491 P.2d 249 (Wash. App. 1971); *cf., Stigall v. Stigall,* 277 N.E.2d 802, 811 (Ind. App. 1972) (pension is evidence to be considered by court in determining amount of award of property settlement); *Rogers and Rogers,* 609 P.2d at 881 (retirement benefits, while not marital property to be divided, are marital assets to be considered in

---

**2.** The states of Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, and Washington are community property states and upon dissolution divide equally between the parties the property deemed community property; Maryland, along with another thirty-odd states, is a common law state which applies principles of equitable distribution. Technically, the Maryland statute does not provide for a division of property, only an equitable monetary award which is designed to accomplish an equitable division in an indirect manner. This does not make the out of state cases any less persuasive because the concepts in all the jurisdictions are similar.

formulating decree); *Leighton v. Leighton,* 261 N.W.2d 457, 463-64 (Wis. 1978) (under Wisconsin statute, vested and nonvested pension benefits are to be considered in dividing property). *But see, Savage v. Savage,* 374 N.E.2d 536, 538-40 (Ind. App. 1978); *Witcig v. Witcig,* 292 N.W.2d 788, 793 (Neb. 1980); *Baker v. Baker,* 546 P.2d 1325, 1326 (Ok. 1975). *See generally,* Legislation, *Property Disposition Upon Divorce in Maryland: An Analysis of the New Statute,* 8 U. Balt. L. Rev. 377, 400-403 (1979); *Annot.* Pension or Retirement Benefits as Subject to Award or Division by Court in Settlement of Property Rights Between Spouses, 94 A.L.R.3d 176 (1979).

The rationale of these decisions is that retirement benefits are a form of deferred compensation or wage substitute and the right to receive such benefits, being contractual in nature, a chose in action and thus, property. *See, e.g., Van Loan v. Van Loan,* 569 P.2d at 215-16; *In Re Marriage of Hunt,* 397 N.E.2d at 516-17. In *Rogers and Rogers,* the Court of Appeals of Oregon stated:

> "[V]ested retirement rights are a valuable asset earned through contributions which would otherwise have been available to the parties during the marriage. Even where contributions have been made entirely by the employer, the courts have concluded that retirement benefits are a mode of employee compensation and as such are an earned property right of the marriage. As noted by the California Supreme Court in *Brown,* 544 P.2d at 566, 126 Cal. Rptr. at 638: '*** Over the past decades, pension benefits have become an increasingly significant part of the consideration earned by the employee for his services. As the date of vesting and retirement approaches, the value of the pension right grows until it often represents the most important asset of the marital community. *** A division of *** property which awards one spouse the entire value of this asset, without any offsetting award to the other spouse, does not represent [an]

equal division of *** property ***.' " (Footnote omitted.) 609 P.2d at 880.

The courts have also noted the similarities between pension benefits and other sources of deferred income which are undisputably property, the New Jersey Supreme Court observing:

> "The right to receive monies in the future is unquestionably ... an economic resource. In most situations its present dollar value can be computed. *** No one would quarrel with the proposition that the recipient of a life estate created by a testamentary or *inter vivos* trust owned a valuable asset which would be subject to equitable distribution. So, too, if one purchased or acquired an insurance annuity which paid a weekly sum certain to the beneficiary for life, the right to collect those funds would also be considered property subject to distribution. There are many different types of employee benefits, which employees or former employees receive, which everyone would readily admit are assets that have been acquired during employment. Deferred compensation, stock options, profitsharing and pensions are typical examples." *Kruger v. Kruger,* 375 A.2d at 662.

*See also, Hutchins v. Hutchins,* 248 N.W.2d at 277 ("these deductions [from the husband's salary, paid into a contributory public employees pension account] would have been available to the parties during their marriage to be invested in stock, bonds, savings account, annuity and/or other investments."); *In Re Marriage of Brown,* 126 Cal. Rptr. at 638 ("in other situations, when community funds or efforts are expended to acquire a conditional right to future income, the courts do not hesitate to treat that right as a community asset.").

A significant number of jurisdictions have extended the reasoning set forth above so as to encompass nonvested pension rights as well. *See, e.g., Van Loan v. Van Loan,* 569 P.2d at 215; *In Re Marriage of Brown,* 126 Cal. Rptr. at

634-35; *In Re Marriage of Hunt,* 397 N.E.2d at 518; *Cearley v. Cearley,* 544 S.W.2d at 666; *Leighton v. Leighton,* 261 N.W.2d at 464. Generally, they have reasoned that while the nonvested nature of the pension may make its valuation difficult, it makes the right to receive the benefits no less property; thus they have rejected the characterization of such benefits as "expectancies" and have instead held them to be a "contingent interest in property." *In Re Marriage of Hunt,* 397 N.E.2d at 517.

We are persuaded that the correct rule is that the right to receive retirement benefits under a private or public employees pension plan, whether or not vested, matured, or contributory, is property and that, if acquired during the marriage, it constitutes marital property within the meaning of § 3-6A-01 (e). Accordingly, we hold that the chancellor did not err in determining that the appellant's pension was marital property which could be the subject of a monetary award.

In reaching this conclusion, we are cognizant of our recent decision in *Hill v. Hill,* 47 Md. App. 460, 469, 424 A.2d 779, *cert. granted,* 290 Md.     (1981), in which we held "as a matter of state law that military retirement pay is income and not 'marital property' subject to division upon divorce"; however, *Hill* is not dispositive of the issue in the instant case.

Justice Harry A. Blackmun, writing for the majority in *McCarty v. McCarty,*     U.S.     , 101 S. Ct. 2728, 69 L. Ed. 2d 589, 49 U.S.L.W. 4850, 4853, observed:

> "[M]ilitary retired pay differs in some significant respects from a typical pension or retirement plan. The retired officer remains a member of the Army, . . . and continues to be subject to the Uniform Code of Military Justice. . . . In addition, he may forfeit all or part of his retired pay if he engages in certain activities. Finally, the retired officer remains subject to recall to active duty by the Secretary of the Army 'at any time.' . . . These factors have led several courts, including this one, to conclude that military retired pay is reduced compensation for

reduced current services." (Citations and footnotes omitted.)

In our opinion in *Hill,* we relied most heavily upon two cases: *In Re Marriage of Ellis,* 538 P.2d 1347 (Colo. App. 1975), *aff'd., Ellis v. Ellis,* 552 P.2d 506 (Colo. 1976), which held that military retirement pay was not marital property subject to division upon divorce, and *United States v. Williams,* 279 Md. 673, 370 A.2d 1134 (1977), which held that military retirement pay "constitutes wages for purposes of attachment under" Md. Comm. Law Code Ann. § 15-602. 47 Md. App. at 468-69. The Courts in those two cases each attached substantial weight to the unique characteristics of military retirement pay listed by Justice Blackmun in *McCarty.* As those factors which we found to be of significance in *Hill* are not involved in the pension in the instant case, or in any other non-military pension, we believe that different treatment of civilian and military retirement benefits is appropriate and that our decision in the instant case is not in conflict with our decision in *Hill. Cf., Paulsen v. Paulsen,* 601 S.W.2d 873, 875 (Ark. 1980) ("Military retirement pay is not a fixed and tangible asset such as a vested pension. . . ."); *In Re Marriage of Mitchell,* 579 P.2d at 617 (distinguishing between a public employee retirement and the military pension held not to constitute property in *Ellis v. Ellis, supra*); *compare, Russell v. Russell,* 605 S.W.2d 33, 35 (Ky. App. 1980) (holding military retirement pay not property subject to division, on federal pre-emption grounds), and *Foster v. Foster,* 589 S.W.2d at 224 (Ky. App. 1979) (holding vested private pension is property subject to division).

The appellant's pension is subject to the protections and requirements of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* Section 206 (d) (1) of ERISA, 29 U.S.C. § 1056 (d) (1), provides that "each pension plan [subject to ERISA] shall provide that benefits provided under the plan may not be assigned or alienated." Relying upon the decision of the Supreme Court in *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S. Ct. 802, 59 L. Ed. 2d 1 (1979), the appellant contends that the ERISA

anti-assignment provision bars treatment of his pension as marital property. We do not agree.

In *Hisquierdo,* the Supreme Court held that the noncontractual retirement benefits payable to a railroad employee under The Railroad Retirement Act of 1974, 45 U.S.C. § 231, *et seq.,* are not subject to allocation and division upon dissolution of the employee's marriage. In so doing, the Court reversed a judgment of a California court, which had held such benefits to be community property and awarded the spouse of a railroad employee an interest in the employee's expectation of receiving benefits under the Act. The Supreme Court did so on the basis of a conflict between the California award and the provisions and objectives of the Act; it found that Congress, by expressly providing a separate benefit for an employee's spouse, which was terminated by divorce, see 45 U.S.C. § 231d, and by providing that benefits were not to be "anticipated," "assigned," or "subject to any tax or to garnishment, attachment, or other legal process," *see,* 45 U.S.C. § 231m, had indicated its intent that the full amount of the benefits were for the employee alone, in order to insure that the employee's pension was sufficient to support him in his old age and to encourage retirement. The Court reasoned that diminution of that benefit, either directly, by means of an order directing payment of a portion of the benefits to the spouse, or indirectly, by awarding the spouse other property to offset the amount of the pension, would frustrate the Congress' purpose and that state law was therefore pre-empted under the Supremacy Clause of the United States Constitution.

Subsequent to the submission of arguments in this case, the Supreme Court, in *McCarty v. McCarty, supra,* employing reasoning similar to that in *Hisquierdo,* held that military retirement pay was not subject to division as community property upon dissolution of a serviceman's marriage. The Court found a conflict between the terms of the military retirement statutes and the community property right asserted and found that division of the retirement pay would frustrate the Congressional objective of providing for the retired serviceman and encouraging enlistment, orderly

promotion, and the maintenance of a youthful military; consequently, it held that state law was pre-empted and reversed the California judgment awarding a retired serviceman's former spouse a portion of the serviceman's retirement pay.

These decisions, and the statutes they construe, are clearly distinguishable from the instant case and ERISA. The Supreme Court so indicated in *Hisquierdo,* where it said:

> "In this case, Congress has granted a separate spouse's benefit, and has terminated that benefit upon absolute divorce. Different considerations might well apply where Congress has remained silent on the subject of benefits for spouses, particularly when the pension program is a private one which federal law merely regulates. See Employee Retirement Income Security Act of 1974 [ERISA], 88 Stat. 829, 29 U.S.C. § 1001 *et seq.* Our holding intimates no view concerning the application of community property principles to benefits payable under programs that possess these distinctive characteristics." 99 S. Ct. at 813 n. 24.

In addition, the Supreme Court has twice dismissed appeals from California decisions which had held that ERISA did not bar the treatment of a private pension as community property and the award of an interest in such pension to the employee's spouse. *See, In Re Marriage of Campa,* 89 Cal. App. 3d 113, 152 Cal. Rptr. 362 (1979), *appeal dismissed,* 444 U.S. 1028, 100 S. Ct. 696, 62 L. Ed. 2d 664 (1980); *Johns v. Retirement Fund Trust,* 85 Cal. App. 3d 511, 149 Cal. Rptr. 551 (1978), *appeal dismissed* and *cert. denied,* 444 U.S. 1028, 100 S. Ct. 696, 62 L. Ed. 2d 664 (1980). Such dismissals are viewed as decisions on the merits, holding that no substantial federal question is presented. *See, Hicks v. Miranda,* 422 U.S. 332, 344-45, 95 S. Ct. 2281, 2289, 45 L. Ed. 2d 223 (1975). Finally, our research indicates that arguments similar to that advanced by the appellant have been considered by a number of courts; they have been uniformly rejected.

*See, e.g., In Re Marriage of Hunt,* 397 N.E.2d at 520-21 (Ill. App. 1979). As indicated in *Hisquierdo* and *McCarty,* for pre-emption to occur, state law must do damage to substantial federal interests; we see no such damage in the instant case and therefore find no pre-emption under ERISA.

## II Valuation of Pensions

Valuation of marital property is governed by § 3-6A-05 of the statute, which provides as follows:

"(a) In granting an absolute divorce or annulment, or at any time within 90 days thereafter, if in its decree granting the divorce or annulment the court has expressly reserved the power to do so, the court shall determine which property is marital property if the division of property is an issue. Family use personal property or the family home shall not be considered marital property so long as it is the subject of a use and possession order.

"(b) The court shall determine the value of all marital property. After making the determination, the court may grant a monetary award as an adjustment of the equities and rights of the parties concerning marital property, whether or not alimony is awarded. The amount of the award and the method of its payment shall be determined after considering each of the following factors:

"(1) The contributions, monetary and nonmonetary, of each party to the well-being of the family;

"(2) The value of all property interests of each spouse;

"(3) The economic circumstances of each spouse at the time the award is to be made;

"(4) The circumstances and facts which contributed to the estrangement of the parties;

"(5) The duration of the marriage;

"(6) The age and the physical and mental condition of the parties;

"(7) How and when specific marital property was acquired, including the effort expended by each party in accumulating the marital property;

"(8) Any award or other provision which the court has made under this Subtitle 6A with respect to family use personal property or the family home, and any award of alimony; and

"(9) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award.

"(c) A monetary award made under this section may be reduced to a judgment to the extent that any part of the award is due and owing."

Although § 3-6A-05 (b) (9) states that a monetary award is to be "fair and equitable," the chancellor evidently felt constrained to make an equal division of the parties' property. We observe that he divided equally each and every item determined to be marital property and we note particularly the following colloquy concerning division of the appellant's pension:

"The Court: That seems like a hardship, but it is marital property. It bothers me as much as it must bother you.

Mr. Oneglia [counsel for wife]: It doesn't bother me.

The Court: He can't walk away with it. He could die tomorrow without getting a quarter and yet she's got a $70,000 judgment. That bothers me, but I've got to abide by the law.

Mr. Blitz: A $170,000 obligation in effect that Mr. Ohm is required to transfer either in money or monies worth $160,000 value?

The Court: He may not be able to recover any of the $134,000, God forbid, but tomorrow the judgment would be against him and yet he may not ever be able to draw the pension.

It's hard, but that's apparently the law, at least that's how I'm looking at it. Otherwise, I wouldn't deal with it this way. If I could deal with it any other way, I would have."

We believe that the chancellor improperly limited the discretion which he is to exercise in dividing marital property. The statute does not require that the value of each individual item of marital property be equally divided; indeed, it does not require that the total value of the property and money awarded to the respective spouses be equal. Equal division is a requirement of community property states, not equitable distribution jurisdictions. What is required is that the chancellor reach a fair and equitable award after consideration of each of the factors set forth in § 3-6A-05 (b). *See, Ward v. Ward,* 48 Md. App. 307, 426 A.2d 443 (1981). It is apparent here that the chancellor failed to consider that the appellee, as well as the appellant, has individual pension benefits available. It appears that the chancellor failed to consider the possibility of awarding the entire value of the pension to the husband and making an offsetting award of other property to the wife, in lieu of awarding the wife one-half the value of the pension and entering a judgment against the husband. Finally, it is clear that the chancellor failed to consider the impact of the alimony award made to the wife, as he is required to do under § 3-6A-05 (b) (8), *cf.,* Md. Ann. Code Art. 16, § 1 (b) (1) (ii) and (iv) (requiring that any monetary award made under § 3-6A-05, and rights to receive retirement benefits, be considered in awarding alimony); if his objective was an equal division of property, that objective was not achieved by awarding the wife one-half the husband's pension, while at the same time requiring the husband to pay alimony out of the remainder.

We also believe the chancellor erred in valuing the pension. The problem of valuing and distributing pension benefits to be paid in the future is a difficult one and has not proved susceptible to the imposition of rigid rules. Rather, the courts have generally held that a flexible approach is necessary, so as to accommodate the circumstances

presented by each individual case. The decisions do set forth considerations for the trial courts to take into account in valuing and dividing pension benefits. For the guidance of the chancellor on remand, we shall briefly review some of the decisions and the principles which they enunciate.

In its excellent opinion, the Court in *In Re Marriage of Hunt,* 397 N.E.2d at 519, dealt at some length with the problem of valuation:

> "It is true that placing a present value on a pension or on a profit sharing interest may be difficult, particularly if, as in this case, they have not matured. However, difficulties in valuation are not an insurmountable barrier to including a pension or profit sharing interest, whether matured, vested or nonvested, as marital property.
>
> "The trial court can in some cases determine, by actuarial evidence, the present value of such an interest at the time of divorce. \*\*\* The amount of the pension or profit sharing interest included as marital property would then be the present value of the interest multiplied by a fraction whose numerator is the number of years (or months) of marriage during which benefits were being accumulated, and whose denominator is the total number of years (or months) during which benefits were accumulated prior to divorce. Once the trial court has determined the present value of that part of the pension or profit sharing interest which is marital property, the trial court may award the interest to the employee spouse and give the non-employee spouse other marital property to offset her marital share in the interest. \*\*\*
>
> "In those instances where it is difficult to place a present value on the pension or profit sharing interest due to uncertainties regarding vesting or maturation, or when the present value can be ascertained but the type, or lack, of other marital property makes it impractical or impossible to award

sufficient offsetting marital property to the non-employee spouse, then the trial court in its discretion may award each spouse an appropriate percentage of the pension to be paid 'if, as and when' the pension becomes payable. *** The marital interest in each payment will be a fraction of that payment, the numerator of the fraction being the number of years (or months) of marriage during which benefits were being accumulated, the denominator being the total number of years (or months) during which benefits were accumulated prior to when paid. The trial court, when using this method of allocation, will retain jurisdiction and award the non-employee spouse some percentage of the marital interest in each payment. *** Placing a present value on a nonvested pension or profit sharing interest requires a court to take into account the possibility that death or termination of employment may destroy the interest. *** Thus, this second method of allocating the interest seems particularly appropriate if the interest has not vested, because it 'divides *** the risk that the pension will fail to vest.' " (Citations omitted.)

*See also, In Re Marriage of Brown, supra.*

In *Wilder v. Wilder,* 534 P.2d 1355, 1358 (Wash. 1975), the Court, in considering the valuation of benefits, stated:

"We think the proper rule is that the court must consider all the circumstances and evaluate the probability that the party who has a contingent right to a pension will eventually enjoy that pension. The length of time remaining before eligibility matures is a factor for the court to consider; also, the other options open to the person and the likelihood that he may, in the exercise of a reasonable judgment, decide to pursue some other career and abandon his pension rights. Also, the court must take account of the community's investment in the pension system and determine whether, in

the event the party entitled to the pension decides to abandon his rights, the community's contribution should nevertheless be considered an asset under his control and be balanced against other assets awarded to the other party. There can be no set rule for determining every case and as in all other cases of property distribution, the trial court must exercise a wise and sound discretion."

In *Rogers and Rogers,* 609 P.2d at 882-83, the Court, after examining a number of the cases, suggested the following guidelines for distribution:

"(1) The distribution should generally be based on the contributions made during the marriage. (2) The courts should continue to strive to disentangle the parties as much as possible by determining, where equitable, a sum certain to be paid rather than a percentage based upon expected future contingencies. (3) In determining whether a lump sum award is appropriate, courts should consider the burden it would place on the paying spouse in view of required child support, spousal support, and other property distribution. (4) Where courts determine that the parties will share in the benefits on a proportional basis, the parties should also share the risks of future contingencies, e.g., death of the employe spouse or delayed retirement of the employe spouse, and payment should be to the receiving spouse as the employe spouse receives the retirement pay. (5) Courts should consider, where appropriate, an award of a portion of retirement benefits where other property awarded is not adequate to make an equitable distribution."

Also instructive is *Copeland v. Copeland,* 575 P.2d at 103-04:

"Some courts have felt that it is better to leave the risk apportioned between the two parties and to award either a specified amount or a certain

percentage of the benefit to the nonretiring spouse if, when and as the benefits are paid. The administration of this type of award would be more complex but the court in *In re Marriage of Brown, supra,* held that an administrative burden was not sufficient justification for refusing to divide the benefits in this manner, because it takes into account all of the contingencies. The administration of an ongoing payment type of award should not be an onerous burden though, because alimony and child support payments have been adequately handled in this manner. Such an 'if, when and as received' payment award has been approved in the cases in various jurisdictions. *See, In re Marriage of Brown, supra; Cearley v. Cearley, supra; Miser v. Miser,* 475 S.W.2d 597 (Tex. Civ. App. 1971); *DeRevere v. DeRevere, supra; Pinkowski v. Pinkowski,* 67 Wis. 2d 176, 226 N.W.2d 518 (1975).

"It would appear that a flexible approach to this problem is needed. The trial court should make a determination of the present value of the unmatured pension benefits with a division of assets which includes this amount, or divide the pension on a 'pay as it comes in' system. This way, if the community has sufficient assets to cover the value of the pension, an immediate division would make a final disposition; but, if the pension is the only valuable asset of the community and the employee spouse could not afford to deliver either goods or property worth the other spouse's interest, then the trial court may award the non-employee spouse his/her portion as the benefits are paid."

On remand, the chancellor, in valuing the appellant's pension, and in making a monetary award, should give some consideration to the guidelines set forth above. In some cases, actuarial evidence, if based on all the appropriate factors, will be sufficient to permit valuation; however the courts must be alert to unique circumstances in a particular

case which may render an individual pension more or less valuable than the norm. As we have indicated above, under the alimony and marital property statutes, an award of alimony and a monetary award concerning marital property must be made in conjunction with one another. Accordingly, we shall vacate both awards in the instant case and remand for reconsideration in light of this opinion.

## III Other Contentions

(1) The chancellor refused to permit the appellant to cross-examine the appellee as to her adultery. Although it is within the discretion of the chancellor to require such testimony be brought out by calling the appellee as an adverse witness, it is clear that under the statute the wife's adultery is a factor to be considered not only in making an award of alimony but also in making a monetary award.

(2) If the court did err in declaring two $1,000 life insurance policies to be marital property when in fact they belonged to the sons of the parties, that error can be corrected on remand.

(3) Appellant also alleges that he has been denied the equal protection of the laws and due process. Inasmuch as the constitutional questions were not argued below, we will not consider them here. Md. Rule 1085.

> *Decree affirmed in part and reversed in part.*
> *Case remanded for further proceedings consistent with this opinion.*
> *Costs to be equally divided.*