ROCHELLE K. DEERING *v.* DONALD A. DEERING

[No. 58, September Term, 1981.]

\* \* \*

MARY J. ANDREWS *v.* SAMUEL JUSTUS ANDREWS

[No. 60, September Term, 1981.]

*Decided December 8, 1981.*

The causes were argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

No. 58, *Jeffrey B. Fisher,* with whom were *Fisher & Walcek* on the brief, for appellant.

No. 58, *Allen J. Kruger* and *C. Philip Nichols, Jr.,* with whom were *Goldman, Nichols, Kovelant, Pedersen, Hurtt & Kruger* on the brief, for appellee.

No. 60, *Charles W. Ayres, Jr.,* for appellant.

No. 60, No brief filed for appellee.

DIGGES, J., delivered the opinion of the Court.

It has been said that when a marriage begins, it is made in heaven and will last for life. Modern earthly experience, however, has frequently proven otherwise. Thus, when the marital bond is terminated by law, there inevitably arises a profound necessity to determine as between the former partners what is to be the property of each.[1] To this end, Maryland's new Property Disposition in Divorce and Annulment Law, Md. Code (1974, 1980 Repl. Vol.), §§ 3-6A-01 *et seq.* of the Courts and Judicial Proceedings Article, has substantially modified the traditional property rights of the husband and wife in a divorce proceeding by allowing the chancellor to grant a monetary "adjustment of the equities ... of the parties concerning marital property...." With this opinion, in which we decide two cases involving the same basic issues, we shall address the scope of a spouse's rights in civilian retirement benefits acquired by his or her marriage partner during the coverture period.[2] In the cases here, each wife has appealed from the chancellor's decision that the husband's pension rights do

---

1. See Pattiz, *In a Divorce or Dissolution Who Gets the Pension Rights: Domestic Relations Law and Retirement Plans,* 5 Pepperdine L. Rev. 191 (1978).

2. Concerning military retirement benefits, see Hill v. Hill, 291 Md. 615, 620-621, 436 A.2d 67, 70 (1981), where this Court, relying on the recent United States Supreme Court decision of McCarty v. McCarty, 453 U.S. 210, 101 S. Ct. 2728 (1981), held that "under the Supremacy clause, upon the dissolution of a marriage, [the federal military retirement statute] precludes a Maryland court from dividing military nondisability retired pay as marital property pursuant to 3-6A-05." Because of this decision, *Hill* did not address whether military retired pay constitutes marital property under the Maryland statute. *Id.* n.6.

not in any way constitute marital property under the statutory scheme. We disagree with these sweeping determinations, however, and remand these cases for further consideration of the claims here asserted. Before addressing the merits, we set forth the relevant facts of each action.

In the first case we consider, the appellant, Rochelle K. Deering, was granted a divorce *a vinculo matrimonii* from Donald A. Deering, the appellee, by the Circuit Court for Prince George's County, in March, 1981, after a marriage of sixteen years. At the time of the divorce, the husband had been employed by the Maryland National Capital Park and Planning Commission as a park police officer for fifteen years and had attained the rank of captain. As a result of this employment, appellee possesses certain unmatured, fully vested pension rights based on obligatory contributions deducted from his pay.[3] The record discloses that between April, 1966, and June, 1972, Captain Deering contributed 5.5% of his base wages to a pension fund under a mandatory payroll deduction; since that time, 7% of his salary has been taken for this purpose. All of the husband's payments to the pension fund, as of the divorce date, were made during the marriage, and, by December, 1980, these remittances, including interest, amounted to $18,181.68. The only way for appellee to withdraw his contributions to the retirement

---

**3.** At this point, it is appropriate that we define some of the terms we use in this opinion. In the context of disputes over marital property arising in an action for divorce, a pension is generally regarded as "vested" when the minimum terms of employment necessary to receive retirement pay has been completed; a vested pension thus "survives the discharge or voluntary termination of the employee. In Re Marriage of Brown, 15 Cal. 3d 838, 842, 126 Cal.Reptr. 633, 635 (1976); Robert C.S. v. Barbara J.S., 434 A.2d 383, 386 n.5 (Del. 1981); In Re Marriage of Hunt, 78 Ill.App.3d 653, 397 N.E.2d 511, 515 (1979). A vested pension right is not the same as a "matured" or unconditional right to immediate receipt of retirement payments, and we note that "pensions are generally said to mature ... at the time benefits become presently payable." Robert C.S. v. Barbara J.S., *supra,* n.3; In Re Marriage of Brown, *supra;* In Re Marriage of Hunt, *supra.* Thus, depending on the provisions of a particular retirement plan, an employee's pension entitlement may vest after several years of work, although it does not mature until he reaches a specified age and is compelled or elects to retire and receive benefits. Finally, a "non-contributory" plan is one funded solely by the employer, while a "contributory" pension scheme requires payments by the employee usually in the form of payroll deductions. In Re Marriage of Hunt, *supra.*

plan in a lump sum, however, is to resign his position and surrender all future rights to the plan benefits. In an effort to determine the value of the husband's retirement annuity obtained during the marriage, Mrs. Deering adduced actuarial testimony to the effect that if the husband were to terminate his employment at the time of the divorce but leave his pension contributions in the park police retirement system, then in 1991, when appellee could begin to receive full benefits, he would collect $7,775.00 per year. The actuary calculated the present value of this stream of future pension income to be $64,233.00.

In the trial court, Mrs. Deering claimed that, along with other enumerated items, her husband's retirement fund constituted marital property, thus requiring a monetary award to adjust the equities between the parties. The chancellor, in granting the divorce, ruled that this pension right did not constitute marital property and denied the wife's prayer for relief in this regard. Appellant was, however, awarded custody of the parties' two children and exclusive possession of the family home and the family use personal property for a period of three years. See Md. Code (1974, 1980 Repl. Vol.), §§ 3-6A-01, 3-6A-06 of the Courts and Judicial Proceedings Article. In addition, the husband was ordered to pay $150.00 per month in technical alimony and $300.00 per month for child support. The wife appealed from that part of the decree which denied her assertion that the husband's pension constituted marital property and we granted certiorari before the Court of Special Appeals ruled on the matter.

Mary J. Andrews, the appellant in the other case before us, obtained in November, 1980, a divorce *a vinculo matrimonii* from appellee Samuel Justus Andrews in the Circuit Court for Anne Arundel County. The parties, by stipulation, settled in this case all issues concerning the termination of their sixteen-year marriage except one; Mr. and Mrs. Andrews could not agree on the proper consideration to be given the husband's civil service pension when adjusting the equities of each spouse in marital property pursuant to §§ 3-6A-01, *et seq.* of the Courts and Judicial Proceedings Article.

The record discloses that the husband, age 52, is employed by the United States Government as a pipe fitter and that he has worked in that capacity for fifteen years; Mr. Andrews served in the military for about six years before he obtained his present job. This combined 21 year government service entitled the husband to a civil service pension upon retirement at age 59.[4] Like that of Captain Deering in the other case now before us, appellee Andrews' pension has vested and is funded in part by obligatory deductions from his basic pay. 5 U.S.C. §§ 8334(a) (1), 8338(a). Mr. Andrews acknowledges that he had contributed approximately $12,675.00 toward his retirement and that all of these payments were made during the marriage period. For her part, Mrs. Andrews pointed out to the chancellor that, "she stayed at home, . . . worked, . . . [and] helped [the husband] during [the] entire time that he was earning this pension. . . ." The wife then argued that "she shouldn't be cut out entirely . . ." from enjoyment of a portion of the husband's retirement benefits "just because [the parties] are getting a divorce" on the eve of the husband's retirement, and that it was the intention of the new divorce statute "to make this type of property marital property." The chancellor, however, declared that Mr. Andrews' pension rights were not marital property within the statute's purview, prompting the wife to bring this appeal which we also examine on certiorari before the intermediate court has passed judgment on it.

This State's recently enacted Property Disposition in Divorce and Annulment Act, which spawned these twin controversies, is codified in sections 3-6A-01 through 3-6A-07 of the Courts and Judicial Proceedings Article (1974, 1980 Repl. Vol.), and, before discussing the merits of the issues presented here, we set forth its pertinent provisions. Preliminarily, we are informed by section 3-6A-01 (e) of the act that

> "[m]arital property" is all property, however titled, acquired by either or both spouses during their

---

**4.** See 5 U.S.C. §§ 8333-8338 determining eligibility for benefits and various amounts to be paid based on length of service and age of retiree.

marriage. It does not include property acquired prior to the marriage, property acquired by inheritance or gift from a third party, or property excluded by valid agreement or property directly traceable to any of these sources.

In dealing with such property, section 3-6A-05 (a) directs that

[i]n granting an absolute divorce or annulment, or at any time within 90 days thereafter, if in its decree granting the divorce or annulment the court has expressly reserved the power to do so, the court shall determine which property is marital property if the division of property is an issue. Family use personal property or the family home shall not be considered marital property so long as it is the subject of a use and possession order.

Next, part (b) of section 3-6A-05 commands the court to determine the value of all such marital property. Part (b) then continues:

After making the determination [of value of marital property], the court may grant a monetary award as an adjustment of the equities and rights of the parties concerning marital property, whether or not alimony is awarded. The amount of the award and the method of its payment shall be determined after considering each of the following factors:

(1) The contributions, monetary and nonmonetary, of each party to the well-being of the family;

(2) The value of all property interests of each spouse;

(3) The economic circumstances of each spouse at the time the award is to be made;

(4) The circumstances and facts which contributed to the estrangement of the parties;

(5) The duration of the marriage;

(6) The age and the physical and mental condition of the parties;

(7) How and when specific marital property was acquired, including the effort expended by each party in accumulating the marital property;

(8) Any award or other provision which the court has made under this Subtitle 6A with respect to family use personal property or the family home, and any award of alimony; and

(9) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award.

Finally, part (c) of section 3-6A-05 provides that "[a] monetary award made under this section may be reduced to a judgment to the extent that any part of the award is due and owing."

Our initial task under this statutory outline, therefore, is to review the determination of the trial courts in these cases that the pension benefits acquired by the husbands did not constitute "marital property." In considering the answer to this query, it is well to recognize that section 3-6A-01 *et seq.* represents a new legislative approach to the concept of marriage. This is made clear by the preamble to that law where the General Assembly has declared "that marriage is a union between a man and a woman having equal rights under the law [and that] [b]oth spouses owe a duty to contribute his or her best efforts to the marriage, and both, by entering into the marriage, undertake to benefit both spouses. . . ." 1978 Md. Laws, ch. 794; see Report of Governor's Comm. on Domestic Relations Laws (1978). In this regard, it is significant that over the past several years, pension benefits have become an increasingly important part of an employee's compensation package which he or she brings to a marriage unit.[5] Moreover, in a situation where economic circumstances prevent a husband and wife from saving or investing a portion of the wage earner's income, the pension right swells in importance as retirement or

5. See 29 U.S.C. §§ 1001 (Employee Retirement Security Act (ERISA), Congressional findings and declaration of policy).

vesting approaches, and may well represent the most valuable asset accumulated by either of the marriage partners. *See In Re Marriage of Brown,* 15 Cal.3d 838, 847, 126 Cal.Reptr. 633, 638 (1976); *In re Marriage of Miller,* 609 P.2d 1185 (Mont. 1980); *Fay v. Fay,* 437 N.Y.S.2d 601, 602 (1981); *Rogers and Rogers,* 45 Or.App. 885, 609 P.2d 877, 880-81 (1980). Accordingly, those states, which, like Maryland, confer authority on courts considering divorce matters to make some form of distribution of joint and separate property upon termination of a marriage, with near unanimity, subject retirement benefits in general to division between the former spouses. *E.g., Malone v. Malone,* 587 P.2d 1167 (Alaska 1978); *Van Loan v. Van Loan,* 116 Ariz. 272, 569 P.2d 214 (1977) [6]; *In Re Marriage of Mitchell,* 579 P.2d 613 (Colo. 1978) (en banc); *In Re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Reptr. 633, 544 P.2d 561 (1976) (en banc); *Robert C.S. v. Barbara J.S.,* 434 A.2d 383 (Del. 1981); *Tavares v. Tavares,* 58 Hawaii 541, 574 P.2d 125 (1978); Ramsey v. Ramsey, 96 Idaho 672, 535 P.2d 53 (1975); *In Re Marriage of Hunt,* 78 Ill.App.3d 653, 397 N.E.2d 511 (1979); *Libunao v. Libunao,* 388 N.E.2d 574 (Ind.App. 1979); *In Re Marriage of Schissel,* 292 N.W.2d 421 (Iowa 1980); *Foster v. Foster,* 589 S.W.2d 223 (Ky.App. 1979); *Sims v. Sims,* 358 So.2d 919 (La. 1978); *Miller v. Miller,* 83 Mich.App. 672, 269 N.W.2d 264 (1978); *Elliott v. Elliott,* 274 N.W.2d 75 (Minn. 1978); *In Re Marriage of Powers,* 527 S.W.2d 949 (Mo.App. 1975); *Vert v. Vert,* 613 P.2d 1020 (Mont. 1980); *Kullbom v. Kullbom,* 306 N.W.2d 844 (Neb. 1981); *Kruger v. Kruger,* 375 A.2d 659, 73 N.J. 463 (1977); *LeClert v. LeClert,* 80 N.M. 235, 453 P.2d 755 (1969); *Majauskas v. Majauskas,* 441

---

**6.** The eight community property states (Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, and Washington) have, upon dissolution of a marriage, traditionally divided equally between the parties all property acquired by the marriage partners, however titled. Although Maryland's statute, providing solely for an equitable, monetary adjustment of marital property rights between former spouses, neither requires equal partitioning of marital property nor authorizes a court to change title to such property, the rationale of decisions from community property jurisdictions has proven useful in determining whether pension rights represent "marital property" under common law state statutes. *See* Robert C.S. v. Barbara J.S., 434 A.2d 383, 387 (Del. 1981); In Re Marriage of Hunt, 78 Ill. App. 3d 653, 397 N.E.2d 511, 516-17 (1979).

N.Y.S.2d 900 (1981); *Keig v. Keig,* 270 N.W.2d 558 (N.Dak. 1978); *Rogers v. Rogers,* 45 Or.App. 885, 609 P.2d 877 (1980); *Hansen v. Hansen,* 273 N.W.2d 749 (S.D. 1979); *Cearley v. Cearley,* 544 S.W.2d 661 (Tex. 1976); *Englert v. Englert,* 576 P.2d 1274 (Utah 1978); *Payne v. Payne,* 82 Wash.2d 573, 512 P.2d 736 (1973) (en banc); *Bloomer v. Bloomer,* 84 Wis.2d 124, 267 N.W.2d 235 (1978). *See generally* Annot., Pension or Retirement Benefits as Subject to Award or Division by Court in Settlement of Property Rights Between Spouses, 94 A.L.R.3d 176.

This compendium of representative cases essentially views pension benefits as an economic resource acquired with the fruits of the wage earner spouse's labors which would otherwise have been utilized by the parties during the marriage to purchase other deferred income assets. In this regard, the New Jersey Supreme Court, in interpreting the provisions of that state's marital property act, which is similar to that of Maryland, stated:

> [t]he equitable distribution provision is not concerned with income but with a person's assets in an economic sense on a date certain.
>
> The right to receive monies in the future is unquestionably such an economic resource. In most situations its present dollar value can be computed. ... No one would quarrel with the proposition that the recipient of a life estate created by a testamentary or *inter vivos* trust owned a valuable asset which would be subject to equitable distribution. So, too, if one purchased or acquired an insurance annuity which paid a weekly sum certain to the beneficiary for life, the right to collect those funds would also be considered property subject to distribution. There are many different types of employee benefits, which employees or former employees receive, which everyone would readily admit are assets that have been acquired during employment. Deferred compensation, stock options, profit-sharing and pensions are typical examples. [*Kruger v. Kruger, supra,* 375 A.2d at 662.]

We agree with the analysis used by our sister state, for there is no reason to exclude one form of deferred income asset from the marital estate while including others. Both the nonemployed spouse and his or her wage earning marital partner have the same retirement goals and expectancies regarding the pension benefits as they would if they provided for their later years by using wage income to purchase other investments. And it is manifestly contrary to the language and purpose of section 3-6A-05 to strip the nonemployee spouse of the value of the retirement asset by precluding the chancellor from evaluating its worth prior to adjudicating the property rights of the estranged marriage partners. This determination is certainly supported by the sweeping language of section 3-6A-01 (e). There, "marital property" is defined as "*all property,* however titled, acquired by either or both spouses during the marriage." (emphasis supplied).[7] The term property, "when considered in a broad sense, is a term of wide and rather comprehensive signification. . . . It has been stated that the term embraces everything which has exchangeable value or goes to make up a man's wealth — every interest or estate which the law regards of sufficient value for judicial recognition." *Diffendall v. Diffendall,* 239 Md. 32, 36, 209 A.2d 914, 915 (1965). See *Bouse v. Hutzler,* 180 Md. 682, 686, 26 A.2d 767, 769 (1942).

We recognize that there are, of course, a wide variety of retirement plans available to both private and public employees. Funding and administration of retirement annuities often differ, and most important, the rights which the beneficiaries possess depend on many factors — some flowing from the contract establishing the plan, others from statute. See discussion in *Robert C.S. v. Barbara J.S.,* 434 A.2d 383, 385-86 (Del. 1981).[8] While the appellate tribunals

---

7. Although the statute contains exclusions from the marital estate of "property acquired prior to the marriage, property acquired by inheritance or gift . . . or property excluded by valid agreement," they are not relevant to the facts in the cases now before us.

8. For example, the Employee Retirement Security Act, (ERISA), 29 U.S.C. § 1001 *et seq.,* expressly preempts state law and comprehensively regulates all aspects of private pension plans. Both Mr. Deering's and Mr.

in jurisdictions requiring distribution of marital property generally acknowledge a spouse's right, co-extensive with that of the wage earner spouse, to a portion of retirement benefits earned during the marriage, some of these courts attempt to distinguish among the various types of retirement plan benefits, determining one to constitute marital property while another variety of pension right is not so classified. For example, a few jurisdictions, while characterizing vested, unmatured pension benefits as marital property, have declined to so classify a non-vested retirement annuity. *E.g., Miller v. Miller,* 83 Mich.App. 672, 269 N.W.2d 264 (1978); *Daffin v. Daffin,* 567 S.W.2d 672 (Mo.App. 1978). It is on this basis, also, that some courts which recognize spousal rights in accumulated retirement benefits upon termination of a marriage have held that military retirement pay was not marital property. *E.g., Paulsen v. Paulsen,* 601 S.W.2d 873 (Ark. 1980); *In Re Marriage of Mitchell,* 579 P.2d 613 (Colo. 1978) en banc); see note 2 *supra.* In New Jersey, there appears to be some disagreement over whether an employee's rights in a noncontributory retirement plan constitute marital property. *Compare, Mueller v. Mueller,* 166 N.J.Super. 557, 400 A.2d 136 (1979), *with Weir v. Weir,* 173 N.J.Super. 130, 413 A.2d 638 (1980). The dominant trend in this area of the law,

---

Andrews' retirement benefits in these cases accrued under a "governmental plan" which is specifically excepted from compliance with ERISA, 29 U.S.C. §§ 1002 (32), 1003 (b) (1), and we do not discuss what effect, if any, that federal enactment may have on the issues presented here. See Ohm v. Ohm, 49 Md.App. 392, 400-03, 431 A.2d 1371, 1376-77 (1981). Moreover, 5 U.S.C. § 8345 (j) (1), the enactment governing Mr. Andrews' federal civil service pension, expressly provides that:

> [p]ayments under this subchapter which would otherwise be made to an employee, . . . or annuitant based upon his service shall be paid (in whole or in part) by the Office to another person if and to the extent expressly provided for in the terms of any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation.

Consequently, the issue of whether this federal pension statute preempts this State's divorce law does not arise. Compare McCarty v. McCarty, *supra,* (military pension), and Hisquierdo v. Hisquierdo, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) (federal railroad retirement benefits).

however, rejects such distinctions between pension benefits when making the threshold determination of whether a retirement plan constitutes marital property and postpones consideration of the possibly contingent nature of such rights until valuing the asset or apportioning the marital property between the parties. As was cogently noted by the court in *Weir:*

> [t]he fact is that the concept of vesting, though embodied in the [retirement] plan document itself, really has little meaning from the standpoint of the ultimate decision which must be made under [the marital property act]. Our equitable distribution statute requires that property . . . acquired during marriage . . . be subject to equitable distribution upon divorce. There is no requirement of vesting. In the final analysis, one must determine whether a property right has been acquired during the marriage and whether equity warrants its inclusion in the marital estate in light of its limitations. If deemed includable, the court must mold its judgment to assure a fair allocation of that right. [*Weir v. Weir, supra,* 413 A.2d at 640 (citations omitted).]

Thus in *In Re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Reptr. 633, 544 P.2d 561 (1976) (en banc), the California Supreme Court, in what has become the leading case in this area, concluded that prior decisions were erroneous in excluding non-vested pension benefits from the marital estate. In holding that a non-vested, non-contributory pension interest is a variety of marital property rather than a mere expectancy of gain, the *Brown* court reasoned that "[s]ince pension benefits represent a form of deferred compensation for services rendered, the employee's right to such benefits is a contractual right, derived from the terms of the employment contract. Since a contractual right is not an expectancy but a chose in action, a form of property, . . . an employee acquires a [judicially recognized] property right to pension benefits when he enters upon the performance of his employment contract." *Id.* at 845, 126 Cal.Reptr. at 637

(citations omitted). Moreover, the court explained, the fact that a nonvested pension interest may be contingent upon continued employment does not "degrade that right to an expectancy [because] [t]he law has long recognized that a contingent future interest is property." *Id.* at 847 n.8, 126 Cal.Reptr. at 638, 544 P.2d at 566. Such contingencies, explained *Brown,* should be taken into account by the trial court, not when determining whether the retirement plan is properly includable in the marital estate, but, rather, when allocating the property rights between the parties to the divorce. *Id.* at 848, 126 Cal.Reptr. at 639, 544 P.2d at 567. We are persuaded that the view expressed in *Brown* and *Weir,* square with the concept embodied in section 3-6A-01, which on its face includes all forms of "property" as marital property to be considered by the chancellor when adjusting the equities of the husband and wife, and we here embrace it. We find a substantial number of courts, in states requiring some form of marital property division, including our Court of Special Appeals, which have arrived at the same conclusion regarding the proper treatment of pension benefits in this context. *Ohm v. Ohm,* 49 Md.App. 392, 431 A.2d 1371 (1981); *e.g., Van Loan v. Van Loan, supra* (Arizona); *Robert C.S. v. Barbara J.S., supra* (Delaware); *Linson v. Linson,* 618 P.2d 748 (Haw.App. 1980); *Shill v. Shill,* 100 Idaho 433, 599 P.2d 1004 (1979); *In Re Marriage of Hunt, supra* (Illinois); *Cearley v. Cearley, supra* (Texas); *DeRevere v. DeRevere,* 5 Wash.App. 741, 491 P.2d 249 (1971); *Leighton v. Leighton,* 81 Wis.2d 620, 261 N.W.2d 457 (1978); *compare Weir v. Weir, supra* (New Jersey) *with Mueller v. Mueller, supra* (New Jersey). Consequently, we conclude that a spouse's pension rights, to the extent accumulated during the marriage, constitute a form of "marital property" subject to consideration by the chancellor in accordance with the section 3-6A-05 mandate unless otherwise prohibited by statute. See note 2 *supra.*

Having determined that the retirement benefits accrued by the husbands in the cases now before us constitute "marital property" under section 3-6A-01 of the Courts and Judicial Proceedings Article, it is appropriate that we express

our views on the treatment to be given those assets. We recognize that trial courts are presented with a complex task in properly valuing and allocating retirement benefits between former spouses. In *Bloomer v. Bloomer,* 84 Wis.2d 124, 267 N.W.2d 235, 238 (1978), the Wisconsin Supreme Court aptly noted that:

> [t]he problem of valuing prospective benefits under a pension plan is frequently exacerbated by the fact that unmatured rights may be terminated by death, discharge, or other contingencies. Valuation is further complicated by the dual nature of most pension plans. If the employee continues to work until retirement, the payments to the employee, to the extent derived from employer's contributions, are in the nature of deferred compensation. If, however, the employee terminates work before retirement age, the usual plan provides at least for the return of employee contributions. [(citations omitted).]

It is thus apparent that an elastic approach to this problem is required, *see* I. Baxter, *Marital Property* § 11.2 (1973 ed., 1980 Cum. Supp.), and it is equally clear that section 3-6A-05 provides the chancellor in this State with the necessary flexibility to fairly devise a marital property adjustment. Although the law commands the trial court both to "determine which property is marital property," if its division is an issue, and to "determine the value of all [such] marital property," the enactment further provides that, "after making the [required] determination, the court *may* grant a monetary award as an adjustment of the equities and rights of the parties concerning marital property. . . ." Code (1974, 1980 Repl. Vol.), § 3-6A-05 (emphasis added).[9] Moreover, the amount, if any, of the monetary award and its method of payment is to be fixed by the trial court after its

---

**9.** This State's property disposition upon divorce or annulment law is unique among those of other states in that the chancellor is given no authority to transfer title to marital property under the act. See Grosman, *Identification and Valuation of Assets Subject to Equitable Distribution,* 56 N.Dak.L.Rev. 201, 207 (1980).

evaluation of several enumerated considerations, including "[s]uch other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award." *Id.*

Consequently, when determining the proper allocation of retirement benefits between the parties, the trial court should evaluate various alternatives including those developed by the courts of our sister states. The more salient of these were summarized by the Wisconsin Supreme Court in *Bloomer v. Bloomer, supra,* as follows:

> First, the trial court could consider the amount of [the husband's] contributions to the fund, plus interest, and award [the wife] an appropriate share. . . . Second, the trial court could attempt to calculate the present value of [the husband's] retirement benefits when they vest under the plan. Under this approach, the benefits payable in the future would have to be discounted for interest in the future, for mortality . . . and for vesting. . . . The benefits would then have to be calculated with respect to [the husband's] life expectancy as a retiree. This calculation involves considerable uncertainty, and the amount yielded changes as different assumptions are used with respect to mortality, job turn-over, etc. . . . It has been recognized that this kind of calculation can be very difficult and that, where it becomes too speculative, the trial court should use a different method of valuation. *In re Marriage of Pea,* 17 Wash.App. 728, 566 P.2d 212 (1977); *Robbins v. Robbins,* 463 S.W.2d 876 (Mo. 1971); *In Re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Reptr. 633, 544 P.2d 561 (1976).
>
> Under either of the above two methods, the trial court would have the discretion to order the payment to [the wife] of her share in either a lump sum or in installments, depending primarily on the other assets and relative financial positions of the parties. The third method, which has been used

> widely . . . is to determine a fixed percentage for [the wife] of any future payments [the husband] receives under the plan, payable to her as, if, and when paid to [the husband]. *Blitt v. Blitt,* 139 N.J. Super. 213, 353 A.2d 144 (Ch.Civ. 1976); *DeRevere v. DeRevere,* 5 Wash.App. 741, 491 P.2d 249 (1971); *In Re Marriage of Rister,* 512 S.W.2d 72 (Tex.Civ.App. 1974); *In Re Marriage of Brown, supra.* Under this approach, of course, it is unnecessary to determine the value of the pension fund at all. The court need do no more than determine the appropriate percentage to which the non-employee spouse is entitled. [84 Wis.2d 124, 267 N.W.2d 235, 241 (1978); see *In Re Marriage of Hunt,* 78 Ill.App.3d 653, 397 N.E.2d 511, 519 (1979); *Kullbom v. Kullbom,* 209 Neb. 145, 306 N.W.2d 844 (1981).]

In our view, any of the just articulated approaches may represent the proper one for the trial courts of this State to take. And whether any particular option represents an appropriate exercise of discretion depends, of necessity, upon the circumstances of the individual case. In this regard, we point out that section 3-6A-05 does not require an equal division of marital property, nor does it contemplate a decretal award which is so harsh as to force a wage earner spouse to liquidate his or her pension interest in order to satisfy it. Moreover, we reiterate that the provision does not authorize a property award without the chancellor first giving due consideration to any alimony decreed. § 3-6A-05 (b) (8). Thus, in selecting an appropriate method of allocating retirement benefits between estranged spouses (should the chancellor conclude it to be proper to do so), it is important that he carefully consider all relevant factors beginning with those expressly set forth in 3-6A-05 (b) (quoted *supra*). One other vital consideration, as identified by the Delaware Supreme Court in *Robert C.S. v. Barbara J.S., supra,* 434 A.2d at 388, "is the likelihood whether (and the time when) the employee spouse who holds the pension right will come

into the right of enjoyment." See *Wilder v. Wilder,* 85 Wash.2d 364, 534 P.2d 1355, 1358 (1975).

Accordingly, we vacate the decree of the chancellor in each of these cases and remand for the entry of a new decree structured by section 3-6A-05 and the views we expressed in this opinion.

> *In No. 60, Andrews v. Andrews, so much of the decree as relates to the adjustment of the equities in marital property vacated and case remanded to the Circuit Court for Anne Arundel County for further proceedings consistent with the views expressed herein.*
>
> *Costs to be paid by the appellee.*
>
> *In No. 58, Deering v. Deering, so much of the decree as relates to the adjustment of the equities in marital property vacated and case remanded to the Circuit Court for Prince George's County for further proceedings consistent with the views expressed herein.*
>
> *Costs to be paid by the appellee.*