483 A.2d 97

**Elizabeth G. NISOS**

v.

**Michael J. NISOS.**

**No. 65, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Nov. 8, 1984.

370

372

Michael T. Scanlon, Cleveland, Ohio, with whom was Arthur M. Wagman, Rockville, on the brief, for appellant.

William R. Voltz, Washington, D.C., for appellee.

Argued before BISHOP, ADKINS and GETTY, JJ.

BISHOP, Judge.

Elizabeth G. Nisos appeals from a final decree of divorce *a vinculo matrimonii* obtained against her by the appellee, Colonel Michael J. Nisos. The decree was filed in the Circuit Court for Montgomery County on September 14, 1983. Besides declaring the parties divorced, the decree ordered alimony and property distribution as follows:

1. Appellee was ordered to pay to appellant "$1,400.00 per month indefinite alimony, beginning August 1, 1983;"

2. Appellant was awarded "30% of the United States Air Force Retirement Pension received by Michael J. Nisos, as her share of that marital property. Said thirty percent (30%) of that pension to be reduced by any sum received by [appellant] as alimony ...;"

3. Appellant was "awarded thirty percent (30%) of the Aerospace Education Foundation Pension if and when [appellee] receives same. Said thirty percent (30%) of that pension to be reduced by any sums received by [appellant] as alimony ...;"

4. "[T]hat the Marriott Corporation Stock owned jointly by the parties is to be evenly divided with each party receiving two hundred thirteen shares ...;"

5. All real property owned jointly by the parties was ordered sold "and ... the proceeds of the sale ... divided equally between the parties."

6. All personal property owned jointly by the parties was ordered sold and the proceeds divided equally.[1]

FACTS

Appellant and appellee were married on October 23, 1947. They separated on August 1, 1980. In 1982, appellee filed a Bill of Complaint for Divorce *A Vinculo Matrimonii* on the ground of voluntary separation for more than one year. At

---

1. It was further ordered that the parties undertake a good faith effort to sell and divide both the real and personal properties voluntarily, but if they failed to do so, either party could take further action to enforce the court's order.

the time of trial appellant was 57 years of age and appellee was 61 years of age. Appellee, a career Air Force officer, retired from the service in 1967. Thereafter, he took employment with the Aerospace Education Foundation.

The parties owned four pieces of real property: the marital residence, located in Bethesda, Maryland, and three oceanfront rental properties. Although the trial testimony is by no means clear, it appears the parties titled the properties in both names as tenants by the entirety. The parties also owned 426 shares of stock of the Marriott Corporation which, apparently, they held as joint tenants.

There was evidence that at some point during the marriage appellant received a gift of two houses from her mother. Appellant eventually sold the homes and placed the proceeds in the parties' joint bank accounts. Later, these proceeds were applied toward the purchase price of each of the aforementioned jointly owned real properties as well as the stock.

Appellant raises several allegations of error, both in the Court's decree and in the chancellor's conduct of trial.

■ We preface our review of the merits of the appeal, however, with the observation that rarely does this Court receive a brief and record extract that is as disorganized and unintelligible as that of appellant. Her submission is replete with violations of the mandatory rules of appellate procedure. Briefly, we note the following violations:

1. Appellant attaches and relies on "Appeal Exhibits." Not only are such exhibits not authorized by the rules, but none were either admitted into evidence below or filed with the lower court during pre-trial discovery. A party is not entitled to supplement the record by inserting such foreign matter as he deems advisable. M.R.P. 1028 b 1 (b); *Community Realty Co. v. Siskos*, 31 Md.App. 99, 102, 354 A.2d 181 (1976).

2. Appellant attached to her record extract a document which purported to be her financial statement of record. Upon examination of the record, we learned that this docu-

ment was not in fact the financial statement she filed in court. Moreover, appellant neglected to include the appellee's complete financial statement. We condemn appellant's apparent attempt to mislead the Court. M.R.P. 1028 b 1 (b).

3. Appellant failed to include in her record extract any of the documents admitted at trial. M.R.P. 1028 b 1 (b).

4. Appellant failed to set forth the statute upon which she relied in alleging certain error. M.R.P. 1031 c 3.

5. Appellant failed to set out succinctly and to appropriately number the questions presented. M.R.P. 1031 c 2.

6. Appellant used her "statement of facts" to argue her allegations of error, rather than to guide the court in its understanding of the case. She also failed to refer us to the portions of the transcript upon which she relied in setting out certain "facts", and to note where facts were in dispute. M.R.P. 1031 c 4.

In light of these numerous, and at times egregious, violations of Rules 1028 and 1031, we are authorized in our discretion either to ignore her contentions or ultimately, to dismiss this appeal. 1028 i; 1031 f. *Kemp-Pontiac-Cadillac, Inc. v. S & M Construction Co.*, 33 Md.App. 516, 521, 365 A.2d 1021 (1976). We are convinced, however, that our failure to address these issues would result in substantial injustice to appellant. We decline the temptation to "visit the sins" of the attorney upon his client. Nevertheless, we warn the bar that in the future such failure to comply with the rules will result in summary dismissal of the appeal.

We will address two issues:

I. Whether in making the monetary award, the chancellor complied with Md.Cts. & Jud.Proc.Code Ann. § 3–6A–05 (1984).

II. Whether the chancellor improperly excluded certain evidence.

## I.

■ Md.Cts. & Jud.Proc.Code Ann. § 3–6A–05 (1984)[2] authorizes the chancellor to "grant a monetary award as an adjustment of the equities and rights of the parties concerning marital property." Cts. & Jud.Proc. § 3–6A–05(b). A monetary award is designed to accomplish an equitable division of marital property in an indirect manner, *Ohm v. Ohm,* 49 Md.App. 392, 396, n. 2, 431 A.2d 1371 (1981), "in accordance with the announced policy of the legislature which is to give careful consideration to both monetary and nonmonetary contributions by the spouses to the marriage." *Wimmer v. Wimmer,* 287 Md. 663, 667 n. 2, 414 A.2d 1254 (1980).

■ In *Ward v. Ward,* 52 Md.App. 336, 339, 449 A.2d 443 (1982) Judge Moore, for the Court, summarized the three step process required by § 3–6A–05:

1) if an equitable adjustment over and above the distribution of the spouse's property in accordance with its title is in issue, the court shall determine which property is marital property;

2) the court shall then determine the value of all marital property;

3) finally, the court *may* make a *monetary award as an adjustment* of the parties' "equities and rights" concerning marital property, whether or not alimony is awarded. *If* an award is deemed appropriate, the court shall then consider each of the nine factors enumerated in § 3–6A–05 (b) in determining a fair and equitable amount and the method of its payment. (Emphasis in original).

The chancellor, in announcing his intention to grant appellant's monetary award, stated in part:

Now, the wife contends that she is entitled to a marital award with respect to the husband's U.S. Air Force retirement at this time, an award from the husband's Air

---

**2.** § 3–6A–05 is recodified without substantive change as Md. Family Law Code Ann. §§ 8–203–205 (1984).

Force Association pension which is not available to the husband for another four years at least, until he is 65.

With respect to the Air Force retirement, the wife is clearly entitled to share in this and the Court has reviewed the many factors contained in Section 3–6A–05 of the Marital Property Act. That does not mean to say that you get your Air Force retirement, you pay out alimony from that retirement, and you also have to pay a share. I am certainly not—it is not my intention to create a double payment out of the same fund.

But the Court does recognize that the wife spent many years as a service wife with the expectation, along with your husband, that you would be the beneficiary of a pension after 20 years or whatever it might be, in the service. So, it would seem that it would be fair and equitable, and I have reviewed the many factors contained in Section 3–6A–05 entitled "Monetary Awards" of the Courts and Judicial Proceedings article, and given the fact that—and there has been testimony concerning this $20,000, other monies that have been given, it would appear that maybe bank account-wise, the wife is a little ahead insofar as marital property, but the pension and the retirement is a very valuable right that she ought to be entitled to share in.

The Court feels that it is fair and equitable for the wife to share in this asset, that is, the U.S. Air Force retirement, to the extent of 30 percent of the husband's net receipt of this retirement, on an as, if and when paid basis. Now, this amount will be reduced by any amount the husband may be required to pay the wife in alimony.

As to the Air Force Association pension, the wife is also entitled to share in this asset, and in the Court's opinion, to the extent of 30 percent of the husband's net receipts of this pension, on an as, if and when paid basis. This amount will also be reduced by any amount the husband may be required to pay as alimony.

For the reasons that follow, we hold that the chancellor did not comply with the requirements of § 3–6A–05 and we remand for his redetermination.

A. *The Court Shall Determine Which Property Is Marital Property.*

Section 3–6A–01(e) defines "Marital Property" as

"all property, however titled, acquired by either or both spouses during their marriage. It does not include property acquired prior to the marriage, property acquired by inheritance or gift from a third party, or property excluded by valid agreement, or *property directly traceable* to any of these sources." (Emphasis supplied)

Appellant contends that since the proceeds from the sale of her homes were used to purchase the jointly owned stock and real estate, these properties cannot be characterized as entirely marital. The Court of Appeals addressed this precise issue in the recent case of *Grant v. Zich,* 300 Md. 256, 477 A.2d 1163 (1984). In *Grant,* the Court held that when determining the character of property as marital or nonmarital, under § 3–6A–01(e),

the appropriate analysis to be applied is the source of funds theory [explained in *Harper v. Harper,* 294 Md. 54, 448 A.2d 916 (1982) ] . . . Under that theory, when property is acquired by an expenditure of both nonmarital and marital property, the property is characterized as part nonmarital and part marital, regardless of how titled. The property is nonmarital in the ratio that the nonmarital investment in the property bears to the total nonmarital and marital investment in the property, and its value is not subject to equitable distribution.

(*Id.* at 268–9, 477 A.2d 1163).

The Court went on to hold that the "source of funds theory" applied even to property subsequently titled in the names of both spouses. On behalf of the Court, Judge Davidson wrote:

To characterize property as marital, based upon a presumption of gift arising from the titling of property as tenants by the entirety, makes the characterization of property as marital dependent, not only upon the legalistic concept of title, but also upon the time at which title is obtained, rather than the time at which payments are made. To employ a presumption of gift based upon the titling of property as tenants by the entirety, rather than making a determination as to the source of funds used by the spouses to acquire the property, is to create a preference for the classification of property as marital and, therefore, subject to equitable distribution. For these reasons, a presumption of gift based upon the titling of property as tenants by the entirety when characterizing property as marital or non-marital under § 3–6A–01(e) is not consonant with the legislative policies embodied in the Act. *Accordingly, we now hold that when characterizing property as marital or non-marital under § 3–6A–05(a) for the purpose of granting a monetary award under § 3–6A–05(b), a presumption of gift does not arise from the titling of property as tenants by the entirety.*

300 Md. at 270–71, 477 A.2d 1163 (footnote omitted) (Emphasis added).

The principles enunciated in *Grant* apply directly to the instant case. It is undisputed that appellant contributed her separate, nonmarital property toward the purchase of the Marriott Stock. Her separate property was also used to make the down payment on each of the jointly owned real properties.

In disposing of this issue the chancellor stated:

Now, between husband and wife there is a presumption of gift. If one party contributes to any party, whether by way of a piece of property received, or by way of salaries invested or mortgages paid, it is presumed that half of it is a gift to the other spouse.

He then ordered sale of the jointly owned real estate in lieu of partition and an equal division of the proceeds in accordance with title. § 3–6A–04(b)(2). Also, he ordered a partition of the 426 jointly owned shares of Marriott Stock, each party to receive 213 shares. § 3–6A–03(b)(2).

■ The chancellor's initial disposition of both the real and personal property in accordance with title was correct. Both § 3–6A–03 and § 3–6A–04 expressly state "the court may not transfer the ownership of [personal or real] property from one spouse to another." For the purpose of determining title to these assets, therefore, and ordering their distribution in accordance with that title, he did not err in applying the presumption of gift principle. The problem is that the chancellor also appears to have relied on the presumption of gift theory in determining what is marital property and the appropriateness and amount of appellant's monetary award. That, as *Grant v. Zich* makes clear, he cannot do.

■ *Grant* eliminated the presumption of gift theory based on titling for purposes of determining whether property acquired during the marriage with nonmarital funds is itself marital property and requires that we look to the source of funds in characterizing jointly titled property. This does not preclude a finding of an actual gift of the property, sufficient to permit its classification as marital; it does, however, preclude the theory of a presumed gift.

B. *The Court Shall Determine The Value of All Marital Property.*

Prior to adjusting the parties' equities and rights concerning the marital property prior to making a monetary award, Cts. & Jud.Proc. § 3–6A–05(b) plainly mandates that the chancellor "shall determine the value of *all marital property.*" (Emphasis supplied). The evidence indicates that the marital property in this case consists of real property, stock and the pensions.

■ As we pointed out in I.A. the chancellor did not properly consider the real property and the stock in making his determination of what property is marital property, therefore, there is no way that he could have properly considered their values.

■ Since the chancellor correctly concluded that the appellee's pensions were marital property, the statute required that he ascertain the values of the pensions and include those values in the total value of the marital property before making a monetary award. *Komorous v. Komorous*, 56 Md.App. 326, 328, 467 A.2d 1039 (1983).

We have consistently held that the legislature by use of the word "shall" intended the provision to be mandatory. *Grant v. Zich*, 53 Md.App. 610, 614, 456 A.2d 75 (1983) *aff'd.*, 300 Md. 256, 477 A.2d 1163 (1984); *see, e.g. Deering v. Deering*, 292 Md. 115, 121, 437 A.2d 883 (1981) ("part of (b) section 3–6A–05 *commands* the court to determine the value of all marital property.") (Emphasis added); *Ward v. Ward*, 52 Md.App. 336, 339, 449 A.2d 443 (1982) (court shall determine the value of all marital property); *Ayars v. Ayars*, 50 Md.App. 93, 97, 436 A.2d 490 (1981) (monetary award first *requires* determination of the value of the marital property). (Emphasis added).

■ In the case *sub judice* evidence was produced regarding the amount of monthly payment received by appellee from his Air Force Retirement pension ($1,529); and the amount of the monthly payment appellee expected to receive under his Aerospace Foundation pension, beginning in 1987 ($1,500). The Court received no evidence of either appellee's contributions to the pension funds, if any, or evidence of the present value of appellee's interest in each pension. Without this evidence there is no way that the chancellor could have determined the value of the marital property.

We are mindful that

[t]he problem of valuing and distributing pension benefits to be paid in the future is a difficult one and has not

proved susceptible to the imposition of rigid rules. Rather, the courts have generally held that a flexible approach is necessary, so as to accommodate the circumstances presented by each individual case.

*Ohm v. Ohm,* 49 Md.App. 392, 405–06, 431 A.2d 1371 (1981). *In Deering v. Deering,* 292 Md. at 128, 347 A.2d 883, the Court determined that retirement benefits accrued by a spouse constituted marital property under § 3–6A–01(e).[3] The Court stated that although "an elastic approach to [the] problem [of pension valuation] is required, ... the law *commands* the trial court ... to 'determine the value of all ... marital property' " before granting a monetary award. (Emphasis added).

The Court went on to hold that when determining the proper allocation of retirement benefits between spouses, the trial court could choose among several alternatives, summarized in the Wisconsin case of *Bloomer v. Bloomer,* 84 Wis.2d 124, 267 N.W.2d 235, 241 (1978)

First, the trial court could consider the amount of [the husband's] contributions to the fund, plus interest, and award [the wife] an appropriate share ... Second, the trial court could attempt to calculate the present value of [the husband's] retirement benefits when they vest under the plan. Under this approach, the benefits payable in the future would have to be discounted for interest in the future, for mortality .. and for vesting ... The benefits would then have to be calculated with respect to [the husband's] life expectancy as a retiree. This calculation involves considerable uncertainty, and the amount yielded changes as different assumptions are used with respect to mortality, job turn-over, etc.... It has been recognized that this kind of calculation can be very difficult

---

**3.** 10 U.S.C. § 1408(c)(1) (1982) authorizes state courts to "treat military retirement pay either as property solely of the [military retiree] or as property of the [retiree] and his spouse, in accordance with the law of the jurisdiction..." Military retirement benefits need not be treated any differently than other public and private pension benefits. *See, Hill v. Hill,* 291 Md. 615, 620–21, 436 A.2d 67 (1981).

and that, where it becomes too speculative, the trial court should use a different method of valuation. *In re Marriage of Pea,* 17 Wash.App. 728, 566 P.2d 212 (1977); *Robbins v. Robbins,* 463 S.W.2d 876 (Mo.1971); *In Re Marriage of Brown,* 15 Cal.3d 838, 126 Cal.Reptr. 633, 544 P.2d 561 (1976).

Under either of the above two methods, the trial court would have the discretion to order the payment to [the wife] of her share in either a lump sum or in installments, depending primarily on the other assets and relative financial positions of the parties. The third method, which has been used widely ... is to determine a fixed percentage for [the wife] of any future payments [the husband] receives under the plan, payable to her as, if, and when paid to [the husband]. *Blitt v. Blitt,* 139 N.J.Super. 213, 353 A.2d 144 (Ch.Civ.1976); *DeRevere v. DeRevere,* 5 Wash.App. 741, 491 P.2d 249 (1971); *In Re Marriage of Rister,* 512 S.W.2d 72 (Tex.Civ.App.1974); *In Re Marriage of Brown,* supra. Under this approach, of course, it is unnecessary to determine the value of the pension fund at all. The court need do no more than determine the appropriate percentage to which the non-employee spouse is entitled.

*Id.* at 130–31, 267 N.W.2d 235. The *Deering* Court concluded that in its view "any of the just articulated approaches [to allocation] may represent the proper one for the trial courts of this State to take." *Id.*

By approving the third method of *allocation, supra,* used by the chancellor below, the Court of Appeals did not intend to dispense with the expressed statutory requirement of *valuation. See, Lookingbill v. Lookingbill,* 301 Md. 283 at 290–293, 483 A.2d 97 (Md., 1984).[4]

---

4. In *Lookingbill* the Court quoted the following from *Bloomer:* "Under this approach, of course, it is unnecessary to determine the value of the pension fund at all. The court need do no more than determine the appropriate percentage to which the non-employee spouse is

■ When dealing with the issue of pension valuation for purposes of valuing marital property under § 3–6A–05(b), the courts have approved only those methods which yielded a value. *See, e.g. Grant v. Zich,* 53 Md. at 619, 456 A.2d 75 (chancellor calculated husband's contributions to retirement fund during marriage); *Ohm v. Ohm,* 49 Md. App. 392, 394–5, 431 A.2d 1371 (present value of pension benefits computed). In contrast, we find no Maryland case upholding a monetary award allocating an interest in a pension without the chancellor's first having valued the pension. Cf. *Bangs v. Bangs,* 59 Md.App. 350, 475 A.2d 1214 (1984) (present value of husband's pension calculated prior to award to wife of fixed percentage share "if, as and when" husband received pension).

In this case the chancellor did not value all of the marital property because he failed to determine what portions of the jointly titled real property and stocks were marital property and, consequently, omitted these values and, in addition, he failed to include the value of the pensions.

C. *The Amount of the Monetary Award Shall be Determined After Considering Each of the Enumerated Statutory Factors in § 3–6A–05(b).*

In determining the amount of the award and the method of payment the chancellor shall consider the following factors:

§ 3–6A–05(b):

(1) The contributions, monetary and nonmonetary, of each party to the well-being of the family;

(2) The value of all property interests of each spouse;

(3) The economic circumstances of each spouse at the time the award is to be made;

---

entitled." Taking this quotation in context, we do not believe the Court intended to disregard either the explicit language of Maryland's Marital Property statute or the Court's previous statement in *Derring* which clearly require the valuation of all marital property before an award is made.

(4) The circumstances and facts which contributed to the estrangement of the parties;

(5) The duration of the marriage;

(6) The age and physical and mental condition of the parties;

(7) How and when specific marital property was acquired, including the effort expended by each party in accumulating the marital property;

(8) Any award or other provision which the court has made under this Subtitle 6A with respect to family use personal property or the family home, and any award of alimony; and

(9) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award.

The monetary award is akin to alimony in gross; a lump sum award for the present value of a spouse's inchoate marital rights. *Ward v. Ward,* 52 Md.App. at 339, 449 A.2d 443. It is intended to compensate a spouse who either holds no title or holds title to less than an equitable portion of that property. *Ward v. Ward,* 52 Md.App. at 339. Note, *Property Distribution Upon Divorce in Maryland: An Analysis of the New Statute,* 8 U.Balt.L.Rev. 377, 386 (1979).

In this case, after considering the nine statutory factors, the chancellor "awarded" appellant 30% of each monthly retirement pension payment, if, as and when paid to appellee, "said 30% ... to be reduced by any sums received by [appellant] as alimony."

The chancellor had previously awarded appellant $1,400 per month indefinite alimony. Before mathematically "crediting" appellant's alimony award pursuant to the above "formula", she is due to receive as much as $1,000 per month under the monetary award (approximately 30% of the combined monthly pensions totaling approximately $3,029, or slightly in excess of $900). After crediting against that award her $1,400 monthly alimony, however,

appellant is due nothing from the pensions, as $1,400 will always be in excess of her awarded 30% share. In other words, as long as appellant collects her decreed alimony she will receive none of the monetary award. Therefore, the chancellor's monetary award, which purported to vest in appellant a valuable right, in fact vests nothing. The chancellor awarded appellant no more than a contingent right to 30% of appellee's pensions, which will vest only if appellant ceases to receive any alimony. This he could not do. Although the chancellor was clearly empowered, under Subsection (b)(8), to *consider* the alimony award in determining the *amount* of the monetary award, nothing in the statute permitted him to condition the receipt of the monetary award on the award of alimony.

Compare the statutory scheme of Md.Ann.Code 1957, art. 16, § 1 b (1979 Repl.Vol.) governing the award of alimony:

(b) Factors. Subject to the provisions of paragraph (c) of this section, the award shall be *in such amounts and for such period or periods* of time as the court may deem just, after it considers all relevant factors including:

(1) The financial needs and resources of both parties, including:

(i) All income and assets, including nonincome-producing property;

(ii) Any award made under §§ 3–6A–05 and 3–6A–06 of the Courts and Judicial Proceedings Article;

(iii) The nature and amount of the financial obligations of each party; and

(iv) The respective rights of the parties to receive retirement benefits.

(2) The ability of the party seeking alimony to be wholly or partially self-supporting;

(3) The time deemed necessary by the court for the party seeking alimony to gain sufficient education or training to enable the party to find suitable employment;

(4) The standard of living of the parties established during the marriage;

(5) The duration of the marriage;

(6) The contributions, monetary and nonmonetary, of each party to the well-being of the family;

(7) The facts and circumstances leading to the estrangement of the parties and the dissolution of the marriage;

(8) The age and physical and mental condition of each party;

(9) Any agreement between the parties;

(10) The ability of the party from whom alimony is sought to meet his or her needs while meeting those of the party seeking alimony; and

(11) Such other factors as the court deems it necessary or appropriate to consider in order to arrive at a fair and equitable award of alimony. (Emphasis supplied).

Here, the statute authorizes periodic, temporary or indefinite alimony. By the language of Subsection (b), it vests the chancellor with broad discretion in setting the amount, duration and conditions of alimony. *Brodak v. Brodak*, 294 Md. 10, 28–29, 447 A.2d 847 (1982). Clearly, the chancellor could have awarded alimony which would increase, decrease, or even cease, upon the happening of certain events, such as appellant's receipt of her share of appellee's pension. In contrast, Cts. & Jud.Proc. § 3–6A–05 neither authorizes nor contemplates a contingent monetary award such as that attempted here. Accordingly, we remand for a redetermination of both the alimony and monetary awards, since each is a factor to be considered in determining the other.

▆▆▆ Appellant misconstrues the nature of the monetary award by alleging, ironically, that the chancellor reduced her alimony by the amount of her pension shares. In fact, it appears that this was exactly what the chancellor tried, unsuccessfully, to accomplish. We are mindful of the dictates of M.R.P. 1085, we choose to reach and resolve this

error presented by the record, even though not directly raised, in order to avoid injustice and prevent subsequent meritless appeals.

### D. *Conclusion.*

Upon remand the chancellor should:

1. Determine what property is marital property, giving appropriate consideration to the source of funds and other principles enunciated in *Grant v. Zich,* and including evidence which may be produced on remand of a valid gift by the appellant of the proceeds from the sales of her inherited real properties.

2. Determine the value of all marital property, including the present value of the appellee's pensions. *Komorous v. Komorous,* 56 Md.App. 326, 330, 467 A.2d 1039 (1983). Providing the evidence on remand does not support a finding of a valid gift, in accordance with *Grant v. Zich* and *Harper v. Harper,* 294 Md. 54, 448 A.2d 916 (1982) ascertain the proportion of the jointly owned property which, in view of appellant's nonmarital contributions, is properly characterized as nonmarital property; and place a value on the nonmarital portion. *See, Grant,* 300 Md. at 269, 276 n. 9, 477 A.2d 1163. Determine the ratio between the nonmarital property and the marital property.

3. Decide whether to make a monetary award, and in accordance with the nine factors set out in Family Law § 8–205(a), determine the amount of the monetary award and the method of payment. We point out that Subsection (2) of the above section requires the chancellor to consider "the value of the property interest of each spouse." This would not only include the present value of the pensions with reference to the husband, but also the property interest of the wife based on her nonmarital contributions to the acquisition of the jointly held property.

4. Finally, should the chancellor determine that part of the monetary award reflect appellant's share in appellee's

pensions, he should insure that the payment is consistent with the principles set out in this opinion.

## II.

The final issue which we will address is whether the chancellor improperly excluded hearsay evidence which purportedly documented appellant's separate contributions toward the purchase of marital property.

 The document offered by appellant and excluded by the Court noted that the proceeds from the sale of appellant's homes were the source of funds for the down payments on the jointly owned real estate and also for the purchase of the Marriott stock. The chancellor sustained appellee's objection to the admission of this document. The ruling was correct on two grounds. First, the document was hearsay which could not be verified as a statement of the appellee. Therefore, it would not qualify under the admission exception to the hearsay rule. *See, McCormick, Evidence,* § 262, (3d ed. 1984). Second, the testimony indicated that the document was prepared in the course of settlement negotiations. The chancellor focused on this aspect when ruling the document was inadmissible. The evidence was properly excluded on this ground as well. *Brooks v. Daley,* 242 Md. 185, 194, 218 A.2d 184 (1966); *Brown v. Hebb,* 167 Md. 535, 548, 175 A. 602 (1934).

Furthermore, the evidence, even if admitted, would have been merely cumulative. There was ample testimony that the proceeds of the sale of appellant's real estate helped purchase the jointly owned property. The document only confirmed this fact. Accordingly, there was no reversible error.

 Lastly, appellant contends that the chancellor failed to include certain language in the decree which would have provided her with survivorship rights in appellee's pension in the event of his death. We cannot tell from the record extract if appellant ever submitted the desired language to

the chancellor. If appellant did submit the language in her motion to revise the decree, we affirm the chancellor's refusal to include it, as appellant provides us with no basis for finding the chancellor's refusal was an abuse of discretion. If appellant failed to submit the desired language, upon remand we suggest appellant do so and that the chancellor in his disposition of appellant's request, give due consideration to Family Law § 8–202(a)(3) prohibiting the transfer of title from one spouse to the other.

JUDGMENTS AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED FOR PROCEEDINGS IN ACCORDANCE WITH THIS OPINION;

COSTS TO BE DIVIDED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEE.