487 A.2d 689

**Patricia Anne HARMAN**

**v.**

**Robert S. HARMAN.**

**No. 546, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Feb. 8, 1985.

556

Leonard H. Lockhart, Elkton (Patricia L. Maggio, Baltimore, on brief), for appellant.

Maurice W. Baldwin, Jr., Bel Air (Hatem, Kelly, Baldwin & Marshall, Bel Air, on brief), for appellee.

Argued before WEANT, BISHOP and GARRITY, JJ.

BISHOP, Judge.

This is an appeal from a decree of the Circuit Court for Harford County which granted a divorce *a vinculo matrimonii* to appellant, Patricia Anne Harman, from appellee, Robert S. Harman, on the grounds of desertion. The decree also awarded appellant alimony for two years in the amount of $400.00 per month, a ⅛ interest in appellee's pension, and $1,000.00 in counsel fees.

Appellant contends that the trial court erred when it:

I. Failed to award her alimony for an indefinite period;

II. Characterized certain property as marital for the purposes of granting a monetary award because it relied solely upon the presumption of gift based upon the titling of the property as tenants by the entirety;

III. Awarded her only a ⅛ interest in appellee's accumulated pension rights;

IV. Failed to award her adequate counsel fees.

■ Appellant has failed to comply with Rule 1028 b, regarding the contents of the record extract, and Rule 1031 c 4, regarding references to the record and transcript. In appeals challenging the alimony award, the valuation of marital property or the monetary award, the record extract must contain the evidentiary bases of salaries, expenses, valuations, etc. We cannot rely upon assertions made in briefs or the findings of fact made by the chancellor, and we cannot continually afford to wade through the entire record ourselves and do the work of the attorney. Pursuant to Rules 1028 i and 1031 f, we may dismiss this appeal. *Nisos v. Nisos,* 60 Md.App. 368 at 376, 483 A.2d 97 (1984); *Kemp-Pontiac-Cadillac, Inc. v. S & M Construction Co.,* 33 Md.App. 516, 521, 365 A.2d 1021 (1976). In *Nisos* we warned the bar as we do in this case that "in the future such failure to comply with the rules will result in summary dismissal of the appeal." 60 Md.App. at 376, 483 A.2d 97. Since this appeal was pending at the time of our opinion in *Nisos,* again "we decline the temptation to 'visit the sins' of the attorney upon his client." 60 Md.App. at 376, 483 A.2d 97.

## FACTS

The parties were married on December 27, 1952, and lived together in Aberdeen, Harford County, for approximately twenty-nine years. They had three children, all of whom were adults at the time of trial. During the marriage, appellee earned most of the funds to maintain the family; he has been employed at the Aberdeen Proving Grounds since 1948. Appellant was primarily a non-monetary contributor to the family; she raised the children and managed the household. Appellant does, however, have a nursing degree from Harford Community College and had been employed as a nurse during part of the marriage.

On December 9, 1981, appellee left the marital home. He contended that the marriage relationship was strained and that efforts at reconciliation were unsuccessful. Appellant stated that she did not wish him to leave the home or terminate the marriage. In fact, after he left, she unsuccessfully requested him to return.

The chancellor noted that although living conditions were unpleasant and the marital relationship had "ceased for all practical purposes," appellant had not engaged in any conduct which justified appellee's leaving the marital home. Accordingly, he granted appellant a divorce *a vinculo matrimonii* on the grounds of desertion.

## I.

### Alimony

■ The chancellor awarded appellant alimony in the amount of $400.00 per month for a period of two years. Appellant contends that he erred in failing to make the award for an indefinite period pursuant to Md.Ann.Code art. 16, § 1(c)(1) (1981)[1] which states, in pertinent part, that

The court may award alimony for an indefinite period when it finds as a fact that:

(i) The party, seeking alimony, by reason of age, illness, infirmity, or disability, cannot reasonably be expected to make substantial progress toward becoming self-supporting; or

(ii) Even after the receiving party will have made as much progress toward self-support as can reasonably be expected, the respective standards of living of the two parties will be unconscionably disparate.

Specifically, she relies upon the second factor and alleges that the standards of living of the parties are and will continue to be "unconscionably disparate" in the absence of an award of indefinite alimony.

---

1. This section is now Md. Family Law Code Ann. § 11–106(c) (1984).

The principal function of alimony, under the present statute, is rehabilitation;

> the concept of alimony as a lifetime pension enabling the financially dependent spouse to maintain an accustomed standard of living has largely been superseded by the concept that the economically dependent spouse should be required to become self-supporting, even though that might result in a reduced standard of living.

*Holston v. Holston*, 58 Md.App. 308, 321, 473 A.2d 459 (1984). Subsection 1(c)(1), however, addresses those situations in which it is "impractical to expect a dependent spouse to become self-supporting through further education or job training" and where "rehabilitative alimony for a limited period of time may result in gross inequity." *Holston*, 58 Md.App. at 321–22, 473 A.2d 459.

In *Holston*, we held that the chancellor abused his discretion by failing to award indefinite alimony because at the end of the three year period, during which the appellant would receive alimony payments of $150.00 per week, she unjustifiably would be left "with a standard of living greatly below that enjoyed during the marriage and unconscionably disparate from the standard of living available to" the appellee. 58 Md.App. at 324, 473 A.2d 459. In that case, the appellee earned in excess of $85,000.000 as a dentist, as an instructor the University of Maryland Dental School, and as a consultant. *Id.*, 58 Md.App. at 313, 322, 473 A.2d 459. The appellant had not been employed for fifteen years, when she had been a secretary at the University of Maryland Medical School. *Id.*, 58 Md.App. at 322–23, 473 A.2d 459.

> At the time of trial, secretaries at the university were earning approximately $13,000.00 per year. Even if appellant, re-entering the job market after fifteen years, would be able to gain employment at a similar salary, her earnings would be less than 15 per cent those of appellee. There is nothing in the evidence to indicate that appellant would ever be able to eliminate or even substantially diminish such disparity. Assuming appellant used her

three years of alimony to return to college, receive a degree and acquire a marketable skill, it is questionable whether after graduation she could earn a salary even approaching appellee's earnings. Compounding the difficulty of obtaining an education and a marketable skill is the necessity to provide and care for five minor children. Reading the record, we see no reason to expect that if alimony terminates after three years the respective standards of living of the parties would not then be "unconscionably disparate."

*Id.*, 58 Md.App. at 322, 473 A.2d 459. Furthermore, there was nothing to justify the disparity—"the parties entered the marriage with comparable standards of living, the wife's efforts contributed greatly to the husband's career, and it was the husband's fault that destroyed the marriage." *Id.*

Appellant in the case *sub judice* does not have to care for minor children and she has a full time job as a clerk typist with the federal government with a salary of approximately $11,000.00 per year. In addition, she has a nursing degree and according to the record, could earn from $15,000.00 to $20,000.00 per year as a nurse. Appellant testified, however, that she is not emotionally capable of nursing on a full time basis and that the job with the federal government offers benefits which the nursing position does not. She listed monthly expenses of $1,648.28, which included an automobile payment of $249.55 that apparently terminated in August, 1984, and a net monthly income of $1,450.02.

Appellee has been employed by the federal government since 1948, and earns approximately $37,000.00 per year. He listed monthly expenses of $3,514.50, which the chancellor indicated included a slightly inflated charge for clothing, and a gross pay of approximately $2,862.40 per month.

We find no abuse of discretion in the case *sub judice.* This is not a case like *Holston* where the wife was unemployed, had minor children to care for, and could not hope to earn much more than 15 per cent of her husband's salary.

## II. & III.

### Monetary Award

The chancellor awarded appellant a ⅛ interest in appellee's pension, payable "as, if and when" it accrues, as a monetary award. Md.Cts. & Jud.Proc.Code Ann. § 3–6A–05 (1984).[2] Appellant challenges the amount of this award and the method employed by the chancellor to determine the value of the marital property prior to making it.

In *Ward v. Ward,* 52 Md.App. 336, 449 A.2d 443 (1982), we stated that the purpose of the monetary award "is to counterbalance any unfairness that may result from the actual distribution of property acquired during the marriage, strictly in accordance with its title." 52 Md.App. at 339, 449 A.2d 443. In addition, we explained that

> Section 3–6A–05 envisions a three-step process. *Harper v. Harper,* 294 Md. 54, 448 A.2d 916, 928–29 (1982) 294 Md. at 79 [448 A.2d 916]: 1) if an equitable adjustment over and above the distribution of the spouse's property in accordance with its title is an issue, the court shall determine which property is marital property; 2) the court shall then determine the value of all marital property; 3) finally, the court *may* make a *monetary award as an adjustment* of the parties' 'equities and rights' concerning marital property, whether or not alimony is awarded. *If* an award is deemed appropriate, the court shall then consider each of the nine factors enumerated in § 3–6A–05(b) in determining a fair and equitable amount and the method of its payment. (Emphasis in original).

*Id.*

### A.

### Which Property Is Marital Property

Md.Cts. & Jud.Proc.Code Ann. § 3–6A–05(a)(1) states, in pertinent part, that "the court shall determine which prop-

---

**2.** Now Md. Family Law Code Ann. §§ 8–203 to 205 (1984).

erty is marital property if the division of property is an issue." Marital property is defined as

> all property, however titled, acquired by either or both spouses during their marriage. It does not include property acquired prior to the marriage, property acquired by inheritance or gift from a third party, or property excluded by valid agreement or property directly traceable to any of these sources.

Md.Cts. & Jud.Proc.Code Ann. § 3–6A–01(e) (1984).[3]

The chancellor determined that the marital property consisted of: (1) a certificate of deposit worth $14,000.00; (2) miscellaneous government bonds worth $2,300.00; (3) the real property referred to as lots 4–10; (4) the improvements located on lot number 5 and a portion of lot number 4; (5) the furniture in the family home; (6) the furniture in Robert's apartment; (7) a 1981 Buick Regal; (8) a 1980 Datsun pickup; and (9) Robert's pension.

There is no dispute that the items numbers 1–2, and 4–9, *supra*, constitute marital property. Appellant contends, however, that the lower court impermissibly characterized item 3, the real property, as marital property because it relied upon the presumption of gift theory, *Ayars v. Ayars*, 50 Md.App. 93, 96, 436 A.2d 490 (1981), based upon the fact that appellant had transferred her interest in the real property to herself and appellee as tenants by the entirety.

In March of 1951, appellant's father, Eugene Welsh, Sr., conveyed the lots at issue here, as well as several other lots, to a straw party, who conveyed them to Eugene Welsh, Sr., Eugene Welsh, Jr. and appellant Patricia Welsh, as joint tenants. Eugene Welsh, Sr. died in April of 1951; appellant married appellee in December of 1952; and appellant's brother Eugene Welsh, Jr. married sometime thereafter. In April of 1960, pursuant to an agreement between them to divide the original tract, appellant and her brother Eugene Welsh, Jr. conveyed the tract to a straw party who con-

---

**3.** Now Md. Family Law Code Ann. § 8–201(e) (1984).

veyed lots 4–10 to appellee and appellant as tenants by the entirety.

In the meantime, appellant and appellee built their family home on lot number 5 and a portion of lot number 4. Construction began in the mid to late 1950's and apparently was completed by the time of the April 1960 transfer. Appellee apparently did a substantial part of the construction himself, working in the evenings and on weekends.

According to the chancellor,

> Lots 4, 5, 6, 7, 8, 9 and 10 were originally gifts from the father of Patricia, and as such were excludable from marital property so long as title was in her name.[4] However, by the execution of the deed in 1960 which conveyed these lots to Robert S. Harman and Patricia W. Harman, his wife, as tenants by the entireties (Plaintiff's Exh. No. 11), these lots then became marital property by reason of a gift. There is a presumption in Maryland that transfers between spouses during the period of the marriage constitutes a gift. In this case the parties were married at the time of the acquisition of title as tenants by the entireties and the home had, in fact, been constructed thereon at that time. The home was paid for by Robert and built by him with assistance from Patricia. There is a presumption that the transfer of title to a tenancy by the entireties constituted a gift from each spouse to the other of any interest he or she then held in the property. (See *Ayars v. Ayars*, 50 Md.App. 93, at Pg. 96 [436 A.2d 490].) There was no testimony in this case to rebut the presumption that the 1960 transfer constituted a gift.

---

**4.** In a footnote to this sentence, the chancellor stated that "[w]hen the improvements were placed ... [on lots numbered 4 and 5] the improved lots became part non-marital and part marital" property. Presumably the chancellor meant that the lots, acquired by appellant as a gift from her father prior to the marriage, at the time of the construction of the improvements were non-marital property, while the improvements, constructed by the parties during the marriage, were marital property. To that extent, the analysis was appropriate.

These determinations violate the rule recently established in *Grant v. Zich,* 300 Md. 256, 477 A.2d 1163 (1984):

> when characterizing property as marital or nonmarital under § 3–6A–05(a) for the purpose of granting a monetary award under § 3–6A–05(b), a presumption of gift does not arise from the titling of property as tenants by the entirety. Rather, in characterizing property as marital or non-marital under § 3–6A–05(a), the appropriate analysis to be applied is the source of funds theory enunciated in *Harper* [*v. Harper,* 294 Md. 54, 448 A.2d 916 (1982)].

300 Md. at 271–72, 477 A.2d 1163.[5]

■ Under an appropriate analysis, the "characterization of property as nonmarital or marital depends upon the source of the contributions as payments are made, rather than the time at which legal or equitable title to or possession of the property is obtained." *Id.,* 300 Md. at 270, 477 A.2d 1163. The source of appellant's and appellee's interest in lots 4–10 was appellant's interest in the original tract of land which was a gift from her father before she married appellee. Unless the Court finds reliable evidence of an actual gift from appellant to appellee, lots 4–10 are not marital property.

■ Appellee answers that notwithstanding the use of the presumption of gift and resulting violations of the rule established in *Grant,* the evidence in this case supports a finding that there was an actual gift of the property. While *Grant* "does not preclude a finding of an actual gift of the

---

**5.** In *Grant,* the Court specifically addressed, in a footnote, the Ayars case relied upon by the chancellor in the case *sub judice*

In *Ayars v. Ayars,* 50 Md.App. 93, 436 A.2d 490 (1981), the Court of Special Appeals determined only that the trial court erred in its division of the real property of the parties under § 3–6A–04. In dicta, that Court indicated that when property is titled as tenants by the entirety, a presumption of gift arises and the property should be classified as 'marital property' under § 3–6A–01(e). *Ayars,* 50 Md. App. at 96, 436 A.2d at 492. We note that *Ayars* was decided before our decision in *Harper* which enunciated the source of funds theory. 300 Md. at 271–72 n. 4, 477 A.2d 1163.

property, sufficient to permit its classification as marital; it does ... preclude the theory of a presumed gift." *Nisos v. Nisos*, 60 Md.App. 368 at 381, 483 A.2d 97. Since the chancellor in the case *sub judice* relied upon that theory, and not a finding of actual gift, we will remand the case for his determination on this issue, *see Nisos*, slip op. 60 Md. App. at 381, 483 A.2d 97, for which it may be necessary to take additional evidence.

In addition, we note that the chancellor stated that appellee paid for the home. If the home was purchased with funds earned by appellee during the marriage, it is clearly marital property. If, however, nonmarital funds were used, the home would be subject to the same analysis as lots 4–10. On remand, this issue should be clarified.

### B.

#### The Value of All Marital Property

Md.Cts. & Jud.Proc.Code Ann. § 3–6A–05(b) (1984) states, in pertinent part, that "[t]he court shall determine the value of all marital property." The chancellor in the case *sub judice* determined the following values for the property that he concluded to be marital property:

| | |
|---|---|
| Certificate of Deposit— | $ 14,000.00 |
| Government Bonds— | $ 2,300.00 |
| Lots 6–10— | $ 20,000.00 |
| Lots 4 & 5 and— Improvements | $ 81,000.00 |
| Furniture in family— home | $ 2,500.00 |
| Furniture in Robert's— apartment | $ 2,876.00 |
| 1981 Buick Regal— | $ 7,500.00 |
| 1980 Datsun Pickup— | $ 4,000.00 |
| Robert's Pension— | $ 374,688.00 |

$32,244.56 cumulative payments [6]

---

**6.** This figure regarding cumulative payments, appears in the trial court's memorandum in the same form shown above. The $374,-688.00 purports to be the present value of the pension accumulated

There is no dispute regarding the valuation of the certificate of deposit, government bonds, furniture, automobiles, or that each lot is worth $4,000.00. As stated above, however, the chancellor erred in basing his finding that lots 4–10 were marital property on the presumption of gift theory. If, on remand, there is no finding of actual gift with respect to the lots, the chancellor cannot consider them as marital property. This would exclude not only the $20,000.00 regarding the value of lots 6–10 listed above, but also $8,000.00 (the value of lots 4 and 5 without the improvements) of the $81,000.00 total value listed above for lots 4 and 5 and improvements.

■ Finally, we turn to the question of the value of appellee's pension. At oral argument, appellee's attorney argued that the chancellor misconstrued the rules regarding the valuation of pensions by failing to recognize that the cumulative payments made by appellee to the pension fund was an appropriate alternative method to value the pension. We agree that the evidence submitted regarding cumulative payments to the retirement fund was evidence of an appropriate alternative method of valuation, *see Grant v. Zich,* 53 Md.App. 610, 618–20, 456 A.2d 75 (1983), *aff'd.,* 300 Md. 256, 477 A.2d 1163 (1984), but hold that the chancellor was not required to adopt this method.

In *Deering v. Deering,* 292 Md. 115, 437 A.2d 883 (1981), the Court concluded "that a spouse's pension rights, to the extent accumulated during the marriage, constitute a form of 'marital property' subject to consideration by the chancellor in accordance with the section 3–6A–05 mandate unless otherwise prohibited by statute." 292 Md. at 128, 437 A.2d 883. The Court also outlined several appropriate methods by which a trial court could determine "the proper *allocation* of retirement benefits between the parties." (emphasis added).

during the marriage. The actuary calculated that the present value of the pension rights was $404,542.00, and that 90.1408% of that was accumulated during the marriage period. Accordingly, the present value of the pension accumulated during the marriage should be $364,657.39.

First, the trial court could consider the amount of [the husband's] contributions to the fund, plus interest, and award [the wife] an appropriate share.... Second, the trial court could attempt to calculate the present value of [the husband's] retirement benefits when they vest under the plan. Under this approach, the benefits payable in the future would have to be discounted for interest in the future, for mortality .. and for vesting.... The benefits would then have to be calculated with respect to [the husband's] life expectancy as a retiree. This calculation involves considerable uncertainty, and the amount yielded changes as different assumptions are used with respect to mortality, job turn-over, etc.... It has been recognized that this kind of calculation can be very difficult and that, where it becomes too speculative, the trial court should use a different method of valuation.

Under either of the above two methods, the trial court would have the discretion to order the payment to [the wife] of her share in either a lump sum or in installments, depending primarily on the other assets and relative financial positions of the parties. The third method, which has been used widely ... is to determine a fixed percentage for [the wife] of any future payments [the husband] receives under the plan, payable to her as, if and when paid to [the husband].

*Under this approach, of course, it is unnecessary to determine the value of the pension fund at all. The court need do no more than determine the appropriate percentage to which the non-employee spouse is entitled.*

*Id.*, 292 Md. at 130–31, 437 A.2d 883 (quoting *Bloomer v. Bloomer*, 84 Wis.2d 124, 267 N.W.2d 235, 241 (1978)). (emphasis added and citations omitted).

Within the context of Section 3–6A–05, therefore, *Deering* recognized two appropriate methods for *valuating* pensions—the amount of the contributions made by the spouse during the marriage, plus interest, and the present value of the retirement benefits, when they vest, which were accu-

mulated during the marriage.[7] It also recognized several appropriate methods for the allocation of retirement benefits *if* the court chooses to make an allocation *from the pension*—a lump sum monetary award or installment payments based upon the non-payee spouse's appropriate share of the contribution to or the present value of the pension, or a fixed percentage of any future payments payable "as, if and when" they are paid. Whether the chancellor chooses to make an allocation from the pension, however, he must evaluate it for the purposes of making a monetary award. The statement in *Bloomer* (emphasized *supra*) that under the "if, as and when" approach the court need not determine the value of the pension is clearly inapplicable under our statute which requires a court "to determine the value of all marital property." *See Nisos v. Nisos,* 60 Md.App. 368, 385, 483 A.2d 97 (1984); *Komorous v. Komorous,* 56 Md.App. 326, 329–30, 467 A.2d 1039 (1983).

■ If pension benefits are being paid at the time of the termination of the marriage, the value of the pension is determined and may be distributed in the same way as any other marital property.

A currently non-beneficial pension, however, is a unique type of marital property in that there is usually no way to provide for immediate distribution and usually the full value of the money contributed to the fund during the marriage may not be realized until many years in the future.

---

7. In *Grant v. Zich,* 53 Md.App. 610, 456 A.2d 75 (1983), *aff'd.,* 300 Md. 256, 477 A.2d 1163 (1984), we held that when relying upon the value of contributions to the fund, the court is not compelled to add interest to the contributions. 53 Md.App. at 619–20, 456 A.2d 75.

Present value means "the principal of a sum of money payable at a future date that drawing interest at a given rate will amount to the given sum at the date on which this sum is to be paid." Webster's Third New International Dictionary at 1794 (1971). For example, "at 6% interest the *present value* of $106 due one year hence is $100." *Id.* In Bloomer, quoted *supra,* the Court outlined other factors which are involved in calculating the present value of a pension.

■ When a pension in which the employee is not yet a beneficiary is included as marital property and, in addition, there is other marital property, the determination of whether to grant a monetary award requires that the court value all of the marital property which, of course, includes the pension, determine whether a monetary award should be granted as to both the pension and non-pension marital property, and then make an appropriate award which would balance the equity interests regarding both the pension and the other marital property.

Because of various types of allocations which can be made from a pension, the monetary award can take a variety of forms. For example, it could simply consist of a dollar figure which represents an allocation of pension rights plus any award made to balance the equities regarding other marital property. It could also consist of an award to be satisfied by installment payments representing an allocation of pension rights plus any amount made to balance the equities regarding other marital property. Finally, it could consist of a fixed percentage allocation of pension rights plus any award made to balance the equities regarding other marital property.

We do not attempt to provide for all situations which arise regarding marital property, monetary awards and pension rights. The above framework, however, is intended to de-mystify the relationships between marital property, pension rights, and all of the other factors listed in Section 3–6A–05(b).

The chancellor in the case *sub judice* listed the value of the pension based upon present value and also listed the value of the cumulative payments. After stating the method employed by the actuary to calculate the present value of the pension accumulated during the marriage, the chancellor stated that "no evidence on the value of the pension was presented by appellee." Presumably, he meant that appellee did not present any actuarial evidence on the value of the pension. The chancellor recognized that appellee

presented evidence regarding cumulative payments to the retirement fund; he valued the pension, however, based upon the present value accumulated during the marriage. This was a proper exercise of discretion.

In *Cotter v. Cotter,* 58 Md.App. 529, 473 A.2d 970 (1984), we stated that *"Deering, Ohm* [*v. Ohm,,* 49 Md.App. 392, 431 A.2d 1371 (1981)], and *Grant,* make clear [that] the chancellor has broad discretion not only with respect to evaluating pension or retirement benefits as marital property, but also in the manner of distributing them." Before using pension rights as a basis for, or as a part of, a monetary award, the chancellor must properly value it upon consideration of the various recognized alternative methods raised by the evidence.

## C.

### The Monetary Award

■ After determining what constitutes marital property and its value, the chancellor should consider the question of the monetary award pursuant to Section 3–6A–05(b) which states, in pertinent part, that

The court may grant a monetary award as an adjustment of the equities and rights of the parties concerning marital property, whether or not alimony is awarded. The amount of the award and the method of its payment shall be determined after considering each of the following factors:

(1) The contributions, monetary and non-monetary, of each party to the well-being of the family;

(2) The value of all property interests of each spouse;

(3) The economic circumstances of each spouse at the time the award is to be made;

(4) The circumstances and facts which contributed to the estrangement of the parties;

(5) The duration of the marriage;

(6) The age and physical and mental condition of the parties;

(7) How and when specific marital property was acquired, including the effort expended by each party in accumulating the marital property;

(8) Any award or other provision which the court has made under this Subtitle 6A with respect to family use personal property or the family home, and any award of alimony; and

(9) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award.

Although this determination is "purely discretionary," *Ward v. Ward,* 52 Md.App. 336, 339, 449 A.2d 443 (1982), there are certain issues raised by this appeal and the facts of this case which cannot be overlooked.

First, if there is no finding that appellant made an actual gift to appellee of the interest he has in lots 4–10, the chancellor should recognize that they are not marital property and that their distribution according to title without considering the pre-marital contribution would be inequitable.

Furthermore, there are a number of miscellaneous issues surrounding the marital property which must be considered in making a monetary award. The furniture in appellee's apartment was purchased with marital funds, but appellee has title to it. The government bonds and certificate of deposit which would have been marital property had been disposed of; appellee took $6,300.00 of the total and appellant used $10,000.00 of it. Both automobiles are also marital property. The Buick is titled in the name of the appellant and the Datsun is titled in the name of appellee. Although the chancellor discussed these issues, there is no indication that he attempted to balance the equities. This must be done in conjunction with the other factors set out in Section 3–6A–05(b).

## IV.

### Counsel Fees

Md.Ann.Code art. 16 § 3 (1981) [8] provides that

> The court may from time to time, before or after the granting of a divorce, after considering the financial resources of both parties, their respective needs, and whether there was substantial justification for instituting or defending the proceeding, order one party to pay to the other a reasonable amount for the reasonable and necessary expenses, including suit money, attorney's fees, and costs, of instituting or defending any proceeding, or any proceeding to enforce an award, under this title. The court may in its discretion award reimbursement for such expenses already paid. The court may order that any amount awarded for attorney's fees be paid directly to the attorney and may enter judgment in favor of the attorney, who may then enforce the order in his own name in accordance with the Maryland Rules.

■ The chancellor awarded appellant $1,000.00 counsel fees and required appellee to pay the costs of the proceeding. Appellant contends that her attorney's fees amount to more than $4,000.00 and that the chancellor was clearly wrong in awarding only a fraction of her counsel fees. We do not agree.

The general rule with respect to counsel fees was set forth in *Danziger v. Danziger,* 208 Md. 469, 475 118 A.2d 653 (1955):

> The amount of the award of counsel fees is within the discretion of the chancellor, and although his discretion is subject to review by this Court, the award should not be disturbed unless he exercised his discretion arbitrarily or his judgment was clearly wrong.

*Schweizer v. Schweizer,* 55 Md.App. 373, 381, 462 A.2d 562, *aff'd.,* 301 Md. 626, 484 A.2d 267 (1984).

---

**8.** Now Md. Family Law Code Ann. § 11–110 (1984).

■ Appellant was justified in instituting the action; the chancellor granted her a divorce on the grounds of desertion. The financial needs and resources of the parties were discussed *supra* with reference to alimony and the monetary award. Furthermore, as the chancellor noted in his opinion, appellant has been represented by three different counsel since filing her bill of complaint. Some of her counsel fees, therefore, may be unreasonable. We cannot conclude that the chancellor abused his discretion in making the award of counsel fees.

We note, however, that the chancellor may have applied the statute too narrowly when he stated that a spouse "is entitled to assistance in the payment of counsel fees if her funds are inadequate to provide for the same." This is only part of the consideration. In addition, "we are remanding the case for reconsideration of the monetary award, which may have some effect upon the factors of the relative financial circumstances of the parties, the wife's needs and the husband's ability to pay...." *Holston*, 58 Md.App. at 327, 473 A.2d 459. Accordingly, as in *Holston*, "we will vacate the award of counsel fees to afford the chancellor an opportunity to re-examine the amount of the award in light of any changes in the factors he considered." *Id.*

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED FOR PROCEEDINGS IN ACCORDANCE WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE.